THE STATE OF OHIO, APPELLANT, *v.* ACKISON, APPELLEE.

[Cite as *State v. Ackison* (1993), 66 Ohio St.3d 1209.]

(No. 91–2372—Submitted January 6, 1993—Decided March 17, 1993.)

*J. Stewart Kaiser*, Prosecuting Attorney, for appellant.

*Richard B. Meyers*, for appellee.

This cause is dismissed, *sua sponte*, as having been improvidently allowed.

The court orders that the court of appeals' opinion not be published in the Ohio Official Reports, and that it may not be cited as authority except by the parties *inter se.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS and RESNICK, JJ., concur.

WRIGHT, F.E. SWEENEY and PFEIFER, JJ., dissent.

PFEIFER, J., dissenting. This court granted the state's jurisdictional motion to consider whether, as phrased by the state, "[t]he evidence obtained as a result of search warrants issued for the Home and Office of the Defendant should not be suppressed when the officers acted in good faith." This question would have required us to consider two related issues: whether the warrants, based on information from an unidentified informant, were supported by probable cause and, if not, whether the good faith exception to the exclusionary rule applies in this case so that the evidence obtained by the searches could be admissible. Because both of these issues are of substantial constitutional importance, I dissent from this court's decision to dismiss this case as being improvidently allowed. Moreover, I would have affirmed the decision of the Court of Appeals for Lawrence County.

I

Appellee, William W. Ackison, was the Chief of Police in Ironton, Ohio. On April 25, 1990, Ackison was indicted by a Lawrence County Grand Jury on one count of theft in office and was arraigned on this charge. Later that same

day, Lieutenant James L. Howard of the Lawrence County Sheriff's Office, accompanied by Chief Investigator Ron James of the county prosecutor's office, sought a search warrant from Lawrence County Common Pleas Court Judge Kenneth B. Ater. Lieutenant Howard had prepared by himself two partially handwritten affidavits, which accompanied the requested warrants. When preparing these documents, he did not consult with a prosecutor. One of the written affidavits requested authorization to search Ackison's home; the other sought a search of the suspect's office.

The affidavits were phrased slightly differently. The affidavit supporting the request to search Ackison's home provided in part:

"[A] confidentual [*sic*] informant, who is know [*sic*] to be reliable to this officer in the past stated that the Chief of Police, William W. Ackison, of the Ironton Police Dept. had cashed a check illegally which was for damages to an Ironton police car. The informant also stated that the Chief of Police has been receiving money from a calendar sales company and the Chief is taking the money from the proceeds and keeps it for himself. It was also stated that the Chief of Police has several guns which police records show have been destroyed or are property of the police dept. The informant also states that the guns are kept at his residence and not at the police station. The check case has been investigated and it appears the facts are true. Police Ledger book by serial number will match several guns in the possession of the Chief of Police at his home and they were to have been destroyed. The informant stated the guns are kept in the garage usually."

The affidavit presented by Lieutenant Howard concerning Ackison's office stated:

"A confidentual [*sic*] informant, who is know [*sic*] to be reliable to this officer in the past, stated that the Chief of Police, William W. Ackison, of the Ironton Police Dept. had cashed a check illegally which was for damages to an Ironton Police car. The informant also stated that the Chief of Police has been receiving money from a calendar sales company and that the Chief is taking what money the calendar sales gives the department. It was also stated by the informant that several guns which were to be destroyed by the department are in the possession of the Chief of Police. The first statement made about the check has been investigated by the [illegible] appear to be true. Charges are going to be filed against the Chief of Police, William Ackison, for theft in office. Felony 3. We request this search warrant to assist the investigation into other illegal activities."

After the warrants were issued, Lieutenant Howard and Investigator James proceeded to search Ackison's home and office.

On June 26, 1990, Ackison's attorney, Richard B. Meyers, filed a motion to suppress the evidence obtained during these searches. In this motion, Meyers requested that the court of common pleas find that the affidavits which formed the factual basis for these searches failed to demonstrate probable cause.

Upon reviewing Ackison's motion to suppress, Judge Ater determined that the affidavits attached to the April 25 search warrants lacked probable cause. Accordingly, Judge Ater granted the motion in his decision of September 4, 1990.

On October 1, 1991, the Court of Appeals for Lawrence County affirmed Judge Ater's decision, holding that the affidavits in question failed to establish that the state had probable cause to conduct a search. Additionally, the court of appeals determined that the affidavits were not admissible under the good faith exception to the exclusionary rule.

## II

The failure of Lieutenant Howard to seek the advice and assistance of the prosecuting attorney doomed the search warrants.

### A

There is no question that the affidavits supporting the search warrants in the instant case lacked probable cause. In fact, the state has conceded this point in its sole proposition of law, which reads:

"Evidence obtained as a result of a search warrant issued by a detached and neutral magistrate should not be suppressed when the law enforcement officers operated in objective good faith, *even when probable cause did not exist* for the search warrant if the affidavits go beyond the 'bare bones' classification." (Emphasis added.)

This concession by the state is wise. It is obvious that the warrants and their affidavits fail to pass constitutional scrutiny under the "totality of the circumstances" test delineated by the United States Supreme Court in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. The *Gates* court noted that under this test:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial

basis for * * * conclud[ing]' that probable cause existed." *Id.* at 238–239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

In the case before us, the affidavits in question were based on a witness whose veracity is not demonstrated by any independent facts. Nor were the affidavits supported by a significant basis of knowledge. Quite to the contrary, the alleged informant discussed in the affidavit is anonymous and merely has "knowledge" that the items mentioned in the warrant are either located in the defendant's home or office. The affidavits fail to discuss where or how the undisclosed informant obtained his information, nor do they reveal any corroborative evidence other than Lieutenant Howard's personal voucher of the informant's reliability. Thus, by examining the terms of the affidavits which accompanied the search warrants, one must conclude that Lieutenant Howard failed to establish probable cause when he attempted to obtain court authorization to search the defendant's home and office.

## B

If this court had ruled on the merits of this case, the real point of controversy would have centered not on the existence of probable cause, but on whether the good faith exception to the exclusionary rule nevertheless permitted the state to introduce the evidence obtained from the searches pursuant to the warrants and and affidavits in question. This exception to the exclusionary rule, adopted by the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, was incorporated into this court's Fourth Amendment analysis in *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236, and was reexamined in *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640. As we noted in *George:*

"The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at paragraph three of the syllabus, citing *Leon, supra.*

The rationale for this good faith exception focuses on the ability of the exclusionary rule to deter police negligence or oppressive conduct:

" 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. * * * Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.' " *Leon, supra,* 468 U.S. at 919, 104 S.Ct. at 3418, 82

L.Ed.2d at 696, quoting *Michigan v. Tucker* (1974), 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182, 194.

In the instant case, the state has failed to show any good faith on the part of Lieutenant Howard when he prepared the search warrants and accompanying affidavits. As noted before, Howard never consulted with a prosecutor when he was preparing and signing the documents. Moreover, Howard never presented the reviewing magistrate with any indicia of probable cause other than hearsay statements made by an undisclosed informant. Finally, Howard failed to provide any corroborative evidence which would have bolstered the contentions asserted in the affidavits. In sum, when a police officer personally prepares the affidavits and search warrants based on the uncorroborated conclusions of undisclosed witnesses, and fails to seek prosecutorial assistance in preparing these documents, that officer cannot hide behind the good faith exception to the exclusionary rule when it is ultimately determined that the warrants and affidavits failed to establish probable cause.

The facts in this case illustrate why it should be standard procedure for law enforcement officials to consult with a prosecutor when preparing a search warrant and accompanying affidavits. Under ideal conditions, the prosecutor should be entirely responsible for drafting such documents. In this case, Lieutenant Howard sought and obtained a fishing license, not a search warrant, as a result of his failure to consult with prosecutorial authorities.

Judge Ater was in the best position to evaluate the merits of Ackison's motion to suppress. Judge Ater had the judicial integrity to admit his mistake in originally approving the warrants and affidavits. Although the judge's decision does not mention *Leon* in its legal analysis, we cannot assume that he was unaware of the case and its legal effect.

Former Police Chief Ackison has been convicted of several violations of federal law, see *United States v. Bryant* (C.A.6, 1992), 966 F.2d 1454 (text in WESTLAW). Nevertheless, however bad the character or reputation of the target of a search warrant, compliance with the Fourth Amendment is not excused.

Accordingly, the decision of the court of appeals should be affirmed explicitly by this court in a written opinion.

WRIGHT and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.