OPINION
Appellant William Rowe appeals a judgment of the Holmes County Common Pleas Court convicting him of five counts of Sexual Battery (R.C. 2907.03(A)(5)) and three counts of Rape (R.C.2907.02(A)(1)(b)):
 ASSIGNMENTS OF ERROR:
I. THE EVIDENCE OBTAINED BY USE OF THE SEARCH WARRANT SHOULD HAVE BEEN SUPPRESSED DUE TO THERE BEING INSUFFICIENT PROBABLE CAUSE FOR THE ISSUANCE OF THE WARRANT THEREBY VIOLATING THE DEFENDANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
II. THE TESTIMONY OF ANITA MATHEWS SHOULD HAVE BEEN EXCLUDED DUE TO HER HAVING NO EXPERTISE IN THE AREA OF MOLECULAR BIOLOGY.
III. THE LAB CORP. REPORTS SHOULD HAVE BEEN EXCLUDED FROM EVIDENCE AS NOT BEING ADMISSIBLE UNDER ANY HEARSAY EXCEPTION.
IV. THE TESTIMONY OF DR. MARIANNE BOWDEN SHOULD HAVE BEEN EXCLUDED DUE TO ITS HAVING NO SCIENTIFIC BASIS AND ITS ADMISSION VIOLATING THE APPELLANT'S RIGHTS UNDER THE SIXTH, EIGHTH ANDFOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION.
V. THE STATE'S PSYCHOLOGIST WAS ALLOWED TO COMMENT ON THE TRUTHFULNESS OF THE ALLEGED VICTIM OF THE CRIME.
VI. DEFENDANT-APPELLANT WAS DEPRIVED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO OBJECT AT TRIAL TO THE TESTIMONY OF ANITA MATHEWS AS TO THE MATCH IN THE D.N.A. AND THE INTRODUCTION INTO EVIDENCE OF THE LAB CORP. REPORTS.
VII. DEFENDANT-APPELLANT WAS DEPRIVED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN TRIAL COUNSEL ALLOWED AN UNQUALIFIED WITNESS TO RENDER AN EXPERT OPINION.
VIII. THE TESTIMONY OF JOY ROWE SHOULD HAVE BEEN EXCLUDED FROM TRIAL DUE TO ITS BEING ILLEGALLY OBTAINED BY THE PROSECUTION THUS DEPRIVING THE DEFENDANT OF A FAIR TRIAL UNDER THEFOURTEENTH AMENDMENT.
IX. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT DUE TO TRIAL COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS THE STATEMENTS OF JOY ROWE.
Appellant and his wife, Joy, had two children, including Robin Rowe, the victim in the instant case. Over a five-year period beginning in 1992, appellant engaged in vaginal sexual intercourse on a regular basis with Robin. In exchange for engaging in sexual intercourse with her father, Robin was permitted to smoke, and was given more freedom to go out with her friends. Joy Rowe encouraged Robin to participate in sex with her father, as appellant would give a Joy a six-pack of beer if Robin engaged in sex with him. According to Robin, appellant would ejaculate on the floor next to the bed when engaging in sex with her. On two occasions in 1997, Joy observed sexual intercourse between her husband and her daughter. Joy and appellant would begin in engaging in intercourse. Eventually, Joy would have Robin come upstairs. On these two occasions, Joy sat on the bed during intercourse between her husband and daughter. According to Joy, after watching Robin and appellant engage in intercourse for awhile, she would go downstairs and do the dishes and drink beer. After reporting the incidents of sexual contact to the authorities, Robin was removed from the home and placed in a foster home. After witnessing unusual behavior, the foster family suggested to the Department of Human Services that Robin be evaluated. Accordingly, a psychologist, Dr. Marianne Bowden, interviewed and conducted psychological testing on Robin. She determined from the interviews and testing that Robin suffered from Type II trauma abuse syndrome, typical of children who have been sexually abused over a period of time. Appellant was charged with six counts of forcible rape of a victim less than thirteen years of age, and five counts of sexual battery. The case proceeded to a jury trial. Prior to trial, the three oldest rape counts were nolled. At trial, the State presented the testimony of both Joy and Robin Rowe. Joy Rowe testified as part of a plea agreement, in which she agreed to enter a plea of guilty to a charge of child endangering in exchange for her testimony. Dr. Marianne Bowden testified concerning her findings from psychological testing of Robin. In addition, the State presented DNA evidence, demonstrating that semen found on the carpet next to the bed, where Robin claimed appellant had ejaculated, was a match for a DNA sample taken from appellant. Appellant's theory of the case was that for their own selfish reasons, Joy and Robin were lying. Appellant claimed that Joy was involved with a man known as "Bugman", who was serving a sentence for attempted murder in the Lima Correctional Facility. Appellant produced a letter written to Bugman by Joy, claiming that she was going to give appellant a present he wouldn't soon forget. The letter was written several days before Joy went to the police. He further argued that Joy was under felony indictment for food stamp fraud, and concocted the charges against appellant to give her something to use to bargain with the State. He argued that Robin lied about the acts of intercourse with him in order to get out of the house. He further conceded that she had been sexually abused, but argued that the abuser was another individual. Appellant was convicted of all charges. He was sentenced to life in prison on the three rape convictions, and five years in prison on each of four of the sexual battery charges, and three to ten years in prison on the remaining sexual battery charge. The court ordered the prison sentences to run consecutively.
 I.
On July 3, 1997, Holmes County Court Judge Jane Irving issued a search warrant for appellant's residence for evidence of sexual assaults upon his daughter, including but not limited to semen. Appellant argues that the warrant was not based on sufficient probable cause, as the bare-bones affidavit used to obtain the warrant was insufficient to establish probable cause. In determining the sufficiency of probable cause and an affidavit submitted in support of a search warrant, the task of the issuing Magistrate is to make a practical, common sense decision as to whether, given all the circumstances set forth in the affidavit, including the veracity and basis for knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. State vs. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the Appellate Court should not substitute its judgment for that of a Magistrate by conducting a de novo determination as to whether the affidavit contained sufficient probable cause upon which that court would issue the warrant. Id. at paragraph two of the syllabus. Rather, our duty is simply to ensure that the Magistrate had a substantial basis for concluding that probable cause existed. Id. We should give great deference to the Magistrate's determination of probable cause, and doubtful or marginal cases should be resolved in favor of upholding the warrant. Id. In the instant case, the affidavit recited that on Thursday, July 3, Robin Rowe stated to Chief Thomas Vaughn that on June 18, William Rowe had sexual intercourse with her on a bed located in the room detailed in the affidavit, and that semen was ejaculated upon the floor, beside the bed, on the right side, when the observer faces the bed from the foot end. The affidavit further recited that the semen might have come into contact with the bed sheet, which was on the bed at the time of the alleged offense. The affidavit continued to recite that pursuant to the statement of Robin, the semen may have come into contact with a pad located beneath the sheet, the mattress below the sheet, and carpet segments next to the bed. The portion of the affidavit quoted above was a detailed, fact-specific statement made by the victim to the affiant. This is not a bare-bones affidavit, as alleged by appellant in his brief. The affidavit provided more than sufficient factual information to the issuing judge to establish probable cause to believe that the semen would be located at the place indicated. The first Assignment of Error is overruled.
 II.
Appellant argues that the court erred in admitting the testimony of Anita Mathews concerning the match found by Lab Corp. concerning the DNA sample taken from appellant and the DNA found in the semen found on the floor of his house. Appellant argues that she was not qualified as a molecular biologist, but only as a population geneticist. He argues that while she was qualified to discuss the probabilities of a match after previous testimony that the samples do, in fact, match, she is not qualified to identify a match between two DNA samples. Appellant did not object to Ms. Mathews' qualifications to testify to the match at trial. Therefore, we must find plain error in order to reverse. Crim.R. 52(B). Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. State vs. Nicholas (1993), 66 Ohio St.3d 431. The record does not support appellant's claim that Anita Mathews was not qualified as an expert in the area of molecular biology. She testified that she has a Bachelor's of Science Degree in Biology, and a Master's Degree in Genetics, both from North Carolina State University. She testified that prior to her employment with Lab Corp., she was a DNA analyst for the state crime laboratory. She testified that in her employment at Lab Corp., she is the assistant director of the forensic identity testing lab. She testified that her employment duties included supervising the technologists at the lab, interpreting results from testing conducted in the lab, writing reports to those interpretations, and testifying to those reports in court. The record does not support appellant's claim that she was not qualified to testify to the results of DNA analysis. Further, appellant has not demonstrated that if it was error to allow her to testify concerning the match of the DNA samples, that it was plain error. Appellant asserted that the bed located next to the place where the semen was taken from the carpet was the bed where he and his wife had sexual intercourse on a regular basis. He, therefore, argued that it was not surprising to find his semen in that place. In appellant's theory of the case, the fact that the semen in question belonged to appellant was of no significance to the State's case. The second Assignment of Error is overruled.
 III.
Appellant argues that the court erred in admitting into evidence two reports from Lab Corp. dated September 8, 1997, and September 19, 1997. These reports were prepared by Anita Mathews, and contained the results, analysis, and opinions to which she testified at trial. Appellant argues that the reports were hearsay, and not admissible under any exception to the hearsay rule. Again, appellant failed to object. Therefore, we must find plain error in order to reverse. Appellant has not demonstrated that but for admission of the lab results into evidence, the result of the proceeding would have been different. While Robin testified that when she had intercourse with appellant in the bed, he ejaculated on the carpet near the bed where the semen stain was found, there was also evidence that appellant and his wife engaged in intercourse in the same bed. Therefore, appellant argued that it was not surprising that the semen stain found near the bed in his own home belonged to him. Appellant has not demonstrated that but for the admission of the DNA results into evidence, the result of the proceeding would have been different. The third Assignment of Error is overruled.
 IV.
Appellant argues that the court erred in admitting the testimony of Dr. Marianne Bowden. He argues that her testimony that she believed that Robin had been sexually abused based on the symptoms observed in Robin, which were consistent with behavior observed in other sexually abused children, was an improper comment on the credibility of Robin, as there was no physical evidence to support her claim of sexual abuse. Appellant argues that because child sexual abuse syndrome is not recognized by the psychiatric profession, that such testimony does not involve scientific or technical testing, and therefore, is an inadmissible comment on the credibility of the victim. Appellant's argument has been specifically considered and rejected by the Ohio Supreme Court. In State vs. Stowers (1998), 81 Ohio St.3d 260, paragraph one of the syllabus, the court held that an expert witness' testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence. Dr. Bowden's testimony in the instant case clearly complies with the holding of Stowers. Dr. Bowden is a psychologist who regularly deals with sexual abuse victims. She described to the jury the nature of trauma syndrome, and specifically rape trauma syndrome. She testified without objection that in her opinion, Robin exhibited symptoms of trauma abuse syndrome, exhibited symptoms of disassociation in coping, and exhibited symptoms of Type II trauma abuse syndrome occurring over a long period of time. Dr. Bowden testified concerning the number of objectively scored tests which she gave Robin to reach her conclusion. In addition, Dr. Bowden gave no opinion concerning the identity of the person who sexually abused Robin. Tr. 277. Rather, she evaluated Robin's behavior, and not what Robin specifically said occurred, or who she was accusing. Tr. 280. The court did not err in admitting the testimony of Dr. Bowden. The fourth Assignment of Error is overruled.
 V.
Appellant argues that Dr. Bowden impermissibly commented on Robin's credibility in the following exchange: . . .
 Q. During the course of administering these tests and your interviews with Robin, did you note or see any evidence of deception in the taking of the tests or in your interviews?
A. No, I did not.
Q. Is that something you would look for?
A. Yes.
Q. If someone is being deceptive, would that affect the score?
 A. Yes, it would. And the standardized tests are all designed to be able to detect whether an individual is answering the questions in a way that's abnormal or deceptive.
Q. Abnormal for them?
A. Yes. In comparison to other teenagers.
Q. So, there's certain fail-safe questions?
A. Yes.
Q. Or built-in mechanisms inside the test?
A. Yes.
Q. To prevent that?
A. Yes. . . . Tr. 247-248.
Again, appellant did not object, and therefore, we must find plain error in order to reverse. It is apparent from the record that the comments on whether Robin was deceptive were specifically related to the results of the testing. Dr. Bowden did not testify that she believed Robin was not deceptive concerning allegations as to who sexually abused her. Admission of this testimony was not plain error, as we cannot find that in the absence of this testimony, the result of the proceeding would have been different. The fifth Assignment of Error is overruled.
 VI. VII.
Appellant argues that his trial counsel was ineffective for failing to object to admission of the testimony of Anita Mathews concerning the matching DNA samples, and for failing to object to admission of the laboratory reports. Appellant also argues that counsel was ineffective for failing to object to Dr. Bowden's testimony that Robin exhibited symptoms consistent with other sexually abused children, and to her testimony bolstering the credibility of Robin. Counsel is not ineffective unless his performance fell below an objective standard of reasonable representation, and the appellant was prejudiced by such performance. Strickland vs. Washington (1984), 466 U.S. 668; State vs. Bradley (1989), 42 Ohio St.3d 136, cert. denied,497 U.S. 1011. To show prejudice, the defendant must demonstrate that had counsel not erred, there is a reasonable probability that the outcome of the proceeding would have been different. Id. Trial counsel's handling of the DNA testimony and evidence was consistent with his theory of the case. Counsel argued to the jury that the presence of appellant's semen on the floor next to the bed could be easily explained, as the bed in question was the same bed where he and his wife regularly engaged in sexual intercourse. Tr. 122, 547. Based on his theory that Joy and Robin were lying for their selfish reasons, his decision not to attack the DNA evidence can be justified as reasonable trial strategy, and counsel's performance in this area did not fall below an objective standard of reasonable representation. Further, appellant has not demonstrated that had appellant objected to the testimony of Mathews', admission of the lab reports, and the testimony of Dr. Bowden, the result of proceeding would have been different. As discussed in Assignments of Error II., III., IV., and V., appellant has not demonstrated prejudice from counsel's alleged errors. The case hinged on the credibility of Robin and Joy, and while the DNA evidence and the psychological evidence were somewhat corroborative of their testimony, appellant cannot demonstrate that had counsel objected, the evidence would have been excluded, and in the absence of such evidence, he would have been acquitted. The sixth and seventh Assignments of Error are overruled.
 VIII.
Appellant argues that his wife's testimony was inadmissible, as she agreed to testify as part of a plea bargain. Appellant relies on United States vs. Singleton (10th Cir. 1988), 144 F.3d 1343, for the proposition that testimony is inadmissible when it is given in exchange for the offering, giving, or promising anything of value by the government. However, the Singleton case is interpreting a federal statute, 18 U.S.C. § 201(c)(2), which specifically prohibited the giving, offering, or promising anything of value to a witness because of his testimony. The statute and case interpreting it have no application to a prosecution in state court. Further, the Singleton decision was vacated by the Tenth Circuit en banc, and the court later held that the statute does not encompass an assistant U.S. attorney offering leniency in exchange for truthful testimony. United States vs. Singleton (10th Cir. 1999), 165 F.3d 1297. The eighth Assignment of Error is overruled.
 IX.
Appellant argues that counsel was ineffective for failing to file a motion to suppress Joy Rowe's testimony, for the reasons stated in Assignment of Error VIII. As discussed in Assignment of Error VIII. above, Joy Rowe's testimony was not inadmissible merely because the State offered her leniency in exchange for her testimony. Therefore, counsel was not ineffective for failing to file a motion to suppress. The ninth Assignment of Error is overruled.
The judgment of the Holmes County Common Pleas Court is affirmed.
By: Reader, V.J. Gwin, P.J. and Farmer, J. concur.