THE STATE OF OHIO, APPELLANT, *v.* GEORGE, APPELLEE.

[Cite as State *v.* George (1989), 45 Ohio St. 3d 325.]

(No. 88-559—Submitted April 5, 1989—Decided September 27, 1989.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *William E. Breyer,* for appellant.

*Merlyn D. Schiverdecker,* for appellee.

SHAW, J. This case arises from the issuance and execution of a search warrant and presents two issues for our review: (1) does the affidavit submitted in support of the search warrant contain sufficient probable cause to support the decision of the magistrate to issue the warrant under the "totality-of-the-circumstances" test of *Illinois* v. *Gates* (1983), 462 U.S. 213, and (2) if not, should the evidence obtained by law enforcement officers as the result of their execution of this search warrant be admissible in the prosecution's case-in-chief in any event, under the "good faith exception" to the exclusionary rule set forth in *United States* v. *Leon* (1984), 468 U.S. 897?

The majority in the court of appeals determined that because the affidavit submitted in support of the search warrant related only to an item outside the residence, the affidavit contained "* * * *no factual basis* to support the affiant police officer's conclusion that he had good reason to believe that *in* the appellee's residence there was [*sic*] concealed marijuana in a growing state, sticks, pots and other paraphernalia used to cultivate marijuana, and marijuana prepared for smoking. * * *" (Emphasis *sic.*) Based upon this determination and their interpretation of *Illinois* v. *Gates* and *United States* v. *Leon, supra,* the ma-

jority in the court of appeals concluded that "* * * the affidavit utterly failed to supply the magistrate with the appropriate indicia of probable cause for the issuance of a warrant to search the *interior* of the appellee's residence, and that, under the circumstances, no officer could have reasonably relied upon the warrant to conduct a residence search." (Emphasis *sic.*)

However, in a dissenting opinion, Judge Black expressed his view that under the standard announced in *Illinois* v. *Gates, supra,* the affidavit for the search warrant contained sufficient probable cause to search the residence as well as the yard in this case and that even if the affidavit was determined to be insufficient, this case "* * * falls within the ambit of the 'good-faith' exception to the exclusionary rule under *United States* v. *Leon* * * *," *supra.* For the following reasons, we agree with the analysis of Judge Black and reverse the judgment of the court of appeals.

In *Illinois* v. *Gates, supra,* the United States Supreme Court abandoned the "two-pronged test" of *Aguilar* v. *Texas* (1964), 378 U.S. 108, and *Spinelli* v. *United States* (1969), 393 U.S. 410, which had long governed the determination and review of the sufficiency of probable cause in an affidavit submitted in support of a search warrant, and adopted a "totality-of-the-circumstances" test in its place. *Illinois* v. *Gates, supra,* at 238.[3] In *Massachusetts* v. *Upton* (1984), 466 U.S. 727, the Supreme Court em-

---

[3] Unlike the case before us, *Illinois* v. *Gates, supra,* involved information derived from an informant. In *Gates,* the Illinois Supreme Court upheld suppression of items seized from the defendant's home and automobile, holding that an anonymous letter informing the police of the defendant's alleged drug trafficking activities with details as to an alleged imminent transaction, together with an affidavit containing corroborating data collected by the police in an independent investigation, was inadequate to sustain a determination of probable cause for the issuance of a search warrant. The Illinois court ruled that the "two-pronged" test established by *Aguilar* v. *Texas, supra,* and *Spinelli* v. *United States, supra,* required the affiant to reveal his informant's "basis of knowledge" and provide sufficient facts to establish the informant's "veracity" or the "reliability" of the informant's report. *Illinois* v. *Gates, supra,* at 227-229.

However, in reversing the Illinois Supreme Court, the United States Supreme Court observed in a footnote:

"Our original phrasing of the so-called 'two-pronged test' in *Aguilar* v. *Texas, supra,* suggests that the two prongs were intended simply as guides to a magistrate's determination of probable cause, not as inflexible, independent requirements applicable in every case. In *Aguilar,* we required only that * * * 'the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that * * * narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant * * * was "credible" or his information "reliable." ' " (Emphasis *sic.*) *Gates, supra,* at 230-231, fn. 6.

Accordingly, the United States Supreme Court concluded that the totality-of-the-circumstances test announced in *Gates* was not at all inconsistent with the "two-pronged" test as originally intended, notwithstanding the later "* * * rigid compartmentalization of the inquiries into an informant's 'veracity,' 'reliability,' and 'basis of knowledge,' * * *" *Gates, supra,* at 231, fn. 6, which developed through numerous decisions in the lower courts subsequent to *Aguilar* and *Spinelli,* and which ultimately led to the complete abandonment of the "two-pronged" test announced in *Aguilar* and *Spinelli. Gates, supra,* at 229, fn. 4, and 234-235.

phatically reaffirmed the scope of the *Gates* decision:

"We think that the Supreme Judicial Court of Massachusetts misunderstood our decision in *Gates*. We did not merely refine or qualify the 'two-pronged test.' We rejected it as hypertechnical and divorced from 'the factual and practical considerations of everday [*sic*] life on which reasonable and prudent men, not legal technicians, act.' *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). Our statement on that score was explicit. * * *" *Massachusetts* v. *Upton, supra*, at 732.

The totality-of-the-circumstances test of *Illinois* v. *Gates, supra*, is concisely set forth in that decision at 238-239:

"* * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. *Jones* v. *United States*, 362 U.S. at 271. * * *"

The *Gates* decision provides considerable elaboration as to the "fair probability" standard applicable to the magistrate's probable cause determination. We find the following passage particularly instructive:

"* * * '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion' [quoting from *Locke* v. *United States* (1813), 7 Cranch 339, 348]. More recently, we said that 'the *quanta* * * *

of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar*, 338 U.S., at 173. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that '*only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*' *Spinelli*, 393 U.S., at 419. See Model Code of Pre-Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978)." (Emphasis added.) *Illinois* v. *Gates, supra*, at 235.

It is also important to note that the totality-of-the-circumstances analysis of *Gates* not only addresses the original probable cause determination of the magistrate but carefully limits the role of a reviewing court as well to that of simply "* * * ensur[ing] that the magistrate had a 'substantial basis for * * * concluding' that probable cause existed. * * *" *Id*. at 238-239. In this regard, we find the following language especially pertinent to the case before us:

"* * * [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra*, at 419. * * *" *Gates, supra*, at 236.

"We also have said that '[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants,' *United States* v. *Ventresca*, 380 U.S. 102, 109

(1965). * * *'' *Gates, supra,* at 237, fn. 10. See, also, *Massachusetts* v. *Upton, supra,* at 733.

From the foregoing language, it is clear that reviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Gates, supra,* at 237, fn. 10. It is equally important to note that, in this context, "reviewing court" clearly includes a trial court conducting a suppression hearing as well as the appellate courts, insofar as we are all conducting the same "after-the-fact scrutiny" of the sufficiency of the affidavit.

Thus, under the totality-of-the-circumstances analysis of *Gates, supra,* the precise question before us in this case is simply whether we can say that agent Buffington's affidavit provided a *substantial basis* for the magistrate's conclusion that there was a *fair probability* that marijuana or related paraphernalia would be found in the defendant's residence. Considering the guidelines for review set forth above, we must answer this question in the affirmative.

Despite its brevity, the affidavit in this case describes a growing marijuana plant in an enclosed rear yard of a residential property, observed by a law enforcement officer "* * * who has been trained in the recognition of marijuana in a growing state and who has taken enforcement action in the past when he has observed marijuana growing * * *'' and who, accordingly, requests a search warrant for the yard, outbuildings and residence. While these facts may be minimal, we do not believe that a reviewing court can say that a magistrate confronted with this affidavit had no substantial basis for concluding that there was a *fair probability* that marijuana or paraphernalia related to marijuana would be found in the residence. On the contrary, as noted by Judge Black in his dissenting opinion in the court of appeals, the presence of growing marijuana in a suburban rear yard does not normally occur spontaneously in Ohio and, in this era, the presence of such a plant must be said to raise objective and reasonable inferences amounting to a fair probability, in the words of Judge Black, "* * * that the marijuana is intentionally grown, and that within the house will be found instruments for its cultivation and some marijuana prepared or being prepared for use."

However, even were we to determine that this affidavit did not furnish the magistrate with a substantial basis for concluding that there was probable cause to search the house, we would be compelled nevertheless to uphold this search based upon the "good faith exception" to the exclusionary rule set forth in *United States* v. *Leon, supra,* and adopted by this court in *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251, 22 OBR 427, 490 N.E. 2d 1236. Unlike the case before us, *State* v. *Wilmoth* involved not the issue of probable cause but defects in the warrant procedure under Crim. R. 41. However, *Leon, supra,* held that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Id.* at 918-923, 926.

The rationale for the "good faith exception" is perhaps best expressed in the following language from the *Leon* decision:

" 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. * * * Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.' " *Leon, supra,* at 919, quoting *Michigan* v. *Tucker* (1974), 417 U.S. 433, 447.

"This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. * * * In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. * * * Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (Footnotes omitted.) *Leon, supra,* at 920-921. See, also, *Massachusetts* v. *Sheppard* (1984), 468 U.S. 981, 990.

Accordingly, the *Leon* court concluded:

" '* * * [S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' *Illinois* v. *Gates,* 462 U.S., at 267 (WHITE, J., concurring in judgment), for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' *United States* v. *Ross,* 456 U.S. 798, 823, n. 32 (1982). * * *" *Leon, supra,* at 922.

Nevertheless, in setting forth its "good faith exception" to the exclusionary rule, the United States Supreme Court has cautioned that " '* * * the officer's reliance on the magistrate's probable-cause determination * * * must be *objectively reasonable* * * *.' " (Emphasis added.) *Id.* at 922. See, also, *Massachusetts* v. *Sheppard, supra,* at 988. Accordingly, suppression remains an appropriate remedy where: (1) " '* * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *' "; (2) " '* * * the issuing magistrate wholly abandoned his judicial role * * *' "; (3) an officer purports to rely upon " '* * * a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or (4) " '* * * depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. * * *' " (Citations omitted.) *Leon, supra,* at 923.

In the case before us, there is no suggestion of falsity or reckless disregard for the truth on the part of the affiant. Nor is there any indication that the municipal judge " '* * * wholly abandoned his judicial role * * *' " in issuing this warrant. *Id.* Nor can we say, from the standpoint of the law enforcement officers, that a warrant approved by a judge which describes a growing marijuana plant in an enclosed residential yard and authorizes a search of the yard, outbuildings and residence for marijuana-related items, is either " '* * * so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable * * *' " or " '* * * so facially deficient * * * that the executing officers cannot reasonably presume it to be valid." *Id.* Accordingly, we find that this search

falls squarely within the good faith exception to the exclusionary rule set forth in *Leon* and *Wilmoth, supra,* and should be upheld even were the warrant lacking in probable cause as alleged.

In summary, then, we have chosen to apply a two-step analysis to this case. See *Leon, supra,* at 924-925. First, applying the totality-of-the-circumstances test of *Illinois* v. *Gates, supra,* to the magistrate's decision to issue the warrant, we have determined, based upon the facts of this case, that the magistrate had a substantial basis for concluding that probable cause existed to search the defendant's residence. Second, we have determined that in any event, the execution of this warrant and resulting seizure of contraband were well within the standards of the "good faith exception" to the exclusionary rule set forth in *United States* v. *Leon, supra.*

Although the court of appeals duly acknowledged the *Gates* and *Leon* holdings, we believe that the majority erred in failing to apply the proper standard of review under those decisions, conducting instead a *de novo* review of the affidavit which led that court, in essence, to improperly substitute its judgment for that of the magistrate (and thereby to improperly find that no law enforcement officer could reasonably rely on the warrant as well). While such an approach may have been common under the former "two-pronged" test of *Aguilar* and

*Spinelli,* it is now inappropriate under *Gates* and *Leon.* Accordingly, we must reverse the judgment of the court of appeals affirming the trial court's suppression of the material seized from the residence and outbuildings on the defendant's property, and we remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., HOLMES, DOUGLAS and H. BROWN, JJ., concur.

WRIGHT, J., concurs in paragraphs one and three of the syllabus and in the judgment.

SWEENEY, J., dissents.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for RESNICK, J.

WRIGHT, J., concurring separately. The "good-faith exception" to the Fourth Amendment exclusionary rule for searches conducted pursuant to warrants established in *United States* v. *Leon* (1984), 468 U.S. 897, has, in large measure, received critical review by scholars.[4] That decision is an example of the balancing process that the United States Supreme Court has used recently in many cases, including those dealing with the Fourth Amendment.[5]

---

[4] For an interesting dialogue regarding *United States* v. *Leon* (1984), 468 U.S. 897, see Dripps, Living with *Leon* (1986), 95 Yale L.J. 906; Duke, Making *Leon* Worse (1986), 95 Yale L.J. 1405; and Professor Dripps' reply in Dripps, More on Search Warrants, Good Faith and Probable Cause (1986), 95 Yale L.J. 1424. Both authors are critical of the *Leon* decision and its future ramifications.

[5] See, generally, Aleinikoff, Constitutional Law in the Age of Balancing (1987), 96 Yale L.J. 943. Professor Aleinikoff states that "[b]alancing has been a vehicle primarily for weakening earlier categorical doctrines restricting governmental power to search and seize." *Id.* at 965. Fourth Amendment cases cited by Professor Aleinikoff as examples are *Hudson* v. *Palmer* (1984), 468 U.S. 517 (the scope of

As the court has stated, " 'the balancing of competing interests [is] the key principle of the Fourth Amendment.' " *Tennessee* v. *Garner* (1985), 471 U.S. 1, 8 (quoting *Michigan* v. *Summers* [1981], 452 U.S. 692, 700, at fn. 12). This court followed *Leon, supra,* and adopted the good-faith exception in *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251, 22 OBR 427, 490 N.E. 2d 1236, a decision in which I joined. The balance in *Leon* and *Wilmoth, supra,* was between the purpose of the exclusionary rule, which is to deter unlawful searches by police, and the criminal justice system's truth-finding function. *Wilmoth, supra,* at 265, 22 OBR at 438, 490 N.E. 2d at 1247. I remain convinced that this balance is appropriate. If a search warrant is issued by a neutral, detached magistrate, but it is not supported by probable cause, then the error is that of the magistrate, not the requesting police officer, as long as the police officer's reliance upon the warrant is objectively reasonable. *Id.* at 265, 22 OBR at 439, 490 N.E. 2d at 1247.

While it is a close call, I agree with the majority's holding that the facts in the officer's affidavit in this case are sufficient to determine that the magistrate had a " 'substantial basis for * * * conclud[ing]' that probable cause existed" to search the premises and that a search would uncover evidence of wrongdoing. *Illinois* v. *Gates* (1983), 462 U.S. 213, 238-239 (quoting *Jones* v. *United States* [1960], 362 U.S. 257, 271). Other courts have held that a trained officer's view of marijuana growing on the premises is sufficient to establish probable cause to issue a timely warrant to search the premises under control of the defendant for drugs and related paraphernalia. *United States* v. *Smith* (C.A. 6, 1986), 783 F. 2d 648, 652; *United States* v. *Doty* (C.A. 8, 1983), 714 F. 2d 761, 763. *Smith* and *Doty* involved the sighting of more than one marijuana plant, but that is not a determinative factor in my view.

Once this court determines that the search warrant is supported by probable cause, it need not address the good-faith exception to the exclusionary rule. Thus, the role of the reviewing court of the probable-cause determination made by a magistrate is crucial, as it always has been, but it is especially so if an error by the magistrate will not necessarily result in the exclusion of the fruits of the search. In my view, the second paragraph of the syllabus of the majority opinion, and the supporting discussion, slight the role of the reviewing court when scrutinizing a challenged search warrant. It is only a matter of em-

---

the Fourth Amendment); *United States* v. *Place* (1983), 462 U.S. 696 (the definition of a "search"); *New York* v. *Class* (1986), 475 U.S. 106; *Winston* v. *Lee* (1985), 470 U.S. 753; and *New Jersey* v. *T.L.O.* (1985), 469 U.S. 325 (the reasonableness of a search); *Tennessee* v. *Garner* (1985), 471 U.S. 1; and *United States* v. *Montoya de Hernandez* (1985), 473 U.S. 531 (the reasonableness of a seizure); *Camara* v. *Mun. Court of San Francisco* (1967), 387 U.S. 523 (the meaning of "probable cause"); *United States* v. *Martinez-Fuerte* (1976), 428 U.S. 543, 560-561; *United States* v. *Brignoni-Ponce* (1975), 422 U.S. 873, 881; and *Terry* v. *Ohio* (1968), 392 U.S. 1, 27 (the level of suspicion required to support stops and detentions); *Immigration & Naturalization Serv.* v. *Lopez-Mendoza* (1984), 468 U.S. 1032; *Massachusetts* v. *Sheppard* (1984), 468 U.S. 981; *United States* v. *Leon, supra;* *Stone* v. *Powell* (1976), 428 U.S. 465; and *United States* v. *Calandra* (1974), 414 U.S. 338 (the scope of the exclusionary rule); *New Jersey* v. *T.L.O., supra,* at 340-341 (dictum) (the necessity of obtaining a warrant); and *Schall* v. *Martin* (1984), 467 U.S. 253 (the legality of pretrial detention of juveniles).

phasis, but the correct statement that reviewing courts are not to conduct a *"de novo"* review of the record to judge whether probable cause exists to issue a search warrant may, unless more fully explained, suggest that reviewing courts are to follow a "some evidence" rule. This suggestion is misleading. *"De novo* review" is defined in Black's Law Dictionary (5 Ed. 1979) 649, as hearing "[a] matter as court of original and not appellate jurisdiction," while violation of the "some evidence" standard means "[a] decision * * * rendered without some evidence to support it." *State, ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 20, 31 OBR 70, 72, 508 N.E. 2d 936, 938.

Reviewing courts can consider only the facts which are in the affidavit and which are presented to the neutral, detached magistrate, and the "substantial basis" standard of review does give great deference to the magistrate's probable-cause determination because of the strong policy interest in favor of the use of search warrants. The magistrate and a reviewing court are to make a practical and common-sense determination based upon all the circumstances. *Gates, supra; United States* v. *White* (C.A. 1, 1985), 766 F. 2d 22. The magistrate may draw reasonable inferences from the facts received. *United States* v. *May* (C.A. 5, 1987), 819 F. 2d 531. However, the magistrate's issuance of a warrant "cannot be a mere ratification of the bare *conclusions* of others. In order to ensure that such an abdication of the magistrate's duty does not occur, *courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued."* (Emphasis added.) *Gates, supra,* at 239. If the information contained in a search warrant affidavit does not add up to probable cause, even after proper deference to a magistrate's determination, the warrant is invalid. *Gates, supra,* at 239-241; *United States* v. *Lambert* (C.A. 6, 1985), 771 F. 2d 83; *United States* v. *Savoca* (C.A. 6, 1985), 761 F. 2d 292. With that caveat, I concur with the majority's analysis and judgment.

SWEENEY, J., dissenting. In its zeal to uphold the search and seizure undertaken in this case, the majority has conveniently tossed aside the probable cause requirements set forth in the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. In so doing, the majority has extended the holdings in *United States* v. *Leon* (1984), 468 U.S. 897, and *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251, 22 OBR 427, 490 N.E. 2d 1236, far beyond their original intendment. Under such circumstances, I must dissent from the majority decision herein.

In my view, the so-called "good faith" exception to the exclusionary rule announced in *Leon, supra,* and *Wilmoth, supra,* undermines the fundamental rights embodied in both the United States and Ohio Constitutions and should not be embraced by this court or any other court for that matter. I believe that such exception to the clear language of the state and federal Constitutions only serves to excuse negligent or grossly inefficient work by the principals involved in the acquisition of any particular search warrant. It is my further belief that such a relaxed standard will only lead to the sanctioning of even more egregious abuses of the warrant requirement in the future. Therefore, I stand firmly behind my dissent in *Wilmoth, supra,* at 267, 22 OBR at 440, 490 N.E. 2d at 1248, since I believe that the "good faith" exception has no legitimate

place in either federal or Ohio constitutional jurisprudence. The majority's dispensation of the probable cause requirement in the instant case merely illustrates the potential for abuse that I predicted would happen in my dissent in *Wilmoth.*

The majority's fallacious attempt to justify a finding of sufficient probable cause under the totality-of-the-circumstances standard of *Illinois* v. *Gates* (1983), 462 U.S. 213, is patently absurd. Even assuming, *arguendo,* that the "good faith" exception is a proper method for excusing defective search warrants, a careful review of the majority opinion indicates that it merely restates the narrow grounds for invoking the "good faith" exception and then proceeds beyond such narrow grounds to uphold a search warrant that is constitutionally impermissible under either *Leon, supra,* or *Wilmoth, supra.* One of the problems inherent in the majority's cursory analysis is that it interprets and extends the *Leon* exception in a manner that makes it virtually impossible to invalidate any defective search warrant in the future, no matter how lacking in probable cause the affidavit supporting the warrant appears to be.

I submit that the court of appeals below was absolutely correct in finding the instant cause to be markedly different from *Leon, supra.* As the appellate court observed:

"In contrast to the detailed affidavit in *Leon,* the affidavit in support of the application for the instant search warrant contains *no factual basis* to support the affiant police officer's conclusion that he had good reason to believe that *in* the appellee's residence there was [sic] concealed marijuana in a growing state, sticks, pots and other paraphernalia used to cultivate marijuana, and marijuana prepared for smoking. The affidavit related factually only to an item *outside* appellee's residence. Had the affidavit included the information that was adduced during the hearing on the motion to suppress — for example, that the sole marijuana plant in the garden was being individually watered by a sprinkler device * * * — there might have been some tenable basis for using the information inferentially to establish probable cause for a search of the residence itself. However, based upon the meager facts enunciated within the affidavit *sub judice,* we hold that the affidavit utterly failed to supply the magistrate with the appropriate indicia of probable cause for the issuance of a warrant to search the *interior* of the appellee's residence, and that, under the circumstances, no officer could have reasonably relied upon the warrant to conduct a residence search." (Emphasis *sic.*)

The majority opinion in the instant cause simply concludes, without sufficient justification, that the magistrate had a "substantial basis" for permitting a search of the residence. A review of the affidavit, however, indicates that while sufficient indicia of probable cause existed to search the yard, there was absolutely no justification for the magistrate to permit a search of the residence. The record reveals that the agents observed a single marijuana plant growing in appellee's back yard. A fair conclusion from such a fact would be that appellee was probably cultivating the marijuana for his own personal use. A cluster of marijuana plants, on the other hand, may suggest trafficking which may have inferentially provided probable cause for a search of the residence. The majority, however, does not attempt to explain why an officer experienced in drug searches would objectively believe that an all-out search of a home would be justified on the

basis of a solitary marijuana plant in the back yard. The majority simply glosses over this anomaly by issuing a conclusory statement that the search of the home was justified under *Gates*.

In any event, I feel that such an obvious lack of probable cause should not be excused under the guise of a "good faith" exception. As held by the court of appeals below, neither the issuing magistrate nor the executing officers could hold an objective, reasonable belief that probable cause existed to search appellee's residence. The affidavit underlying the warrant simply does not support such a "quantum-leap" finding of probable cause to justify a search of the residence. In another case with facts strikingly similar to those in the instant cause, the court did not hesitate in holding that the "good faith" exception could not "cure" a search of a home where the warrant's supporting affidavit contained no allegation with regard to any infraction of the law occurring inside the home. See *Howard* v. *State* (Fla. App. 1986), 483 So. 2d 844.

Another equally troubling aspect of the majority opinion is that it effectively forecloses any meaningful appellate review of search warrants or affidavits supporting such warrants from this day forward. By characterizing the decision to invalidate the warrant by the courts below as a *"de novo"* determination, the majority totally precludes appellate review of an issuing magistrate's actions under virtually any conceivable set of circumstances. While deference should be accorded a magistrate's determination of probable cause in this context, appellate review of that determination should not be eliminated. In demolishing appellate review in this area, the majority seizes upon an inconspicuous footnote in *Gates, supra,* which is at best *dictum,* and elevates it to

unassailable constitutional authority in its second paragraph of the syllabus. Once again, the majority ranges far beyond that which is necessary to resolve this case, in an apparent attempt to settle this area of law once and for all. In so doing, the majority has hamstrung reviewing courts in all future cases simply to uphold a semi-defective search warrant in this case.

If the United States Supreme Court had been of the opinion that the statement contained in paragraph two of the syllabus above was of such great importance, would it have relegated such a pronouncement to a footnote? Of course not! Since the majority can find authority for its untenable ruling only in a footnote, perhaps it would be advised to consult *Leon, supra,* at 923, where the court stated in footnote 24:

"* * * Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. * * *"

A review of the facts *sub judice* reveals that agent Buffington, who submitted the affidavit to support the issuance of a warrant, did not participate in the execution of the search warrant. I submit that the instant search was conducted in precisely the same manner that the *Leon* court warned would not be permitted under the "good faith" exception. Thus, while the majority professes to "follow" *Leon, supra,* as evidenced by the third paragraph of the syllabus, it actually reaches far beyond the holding in *Leon* and sanctions a defective warrant that the high court clearly stated it would not endorse under the "good faith" exception. Under such circumstances, one can only wonder if any defective search warrant could ever

conceivably be invalidated given the majority's posture in this case. As such, the rights guaranteed under the Fourth Amendment and Section 14, Article I of the Ohio Constitution have become hollow indeed.

As I alluded to in my dissenting opinion in *Wilmoth, supra,* the main problem in embracing a "good faith" exception is that the potential exists for the proverbial exception to swallow the rule. This is exactly what the majority opinion has accomplished herein. The rule of the state and federal Constitutions that "* * * no warrants shall issue, but upon probable cause, supported by oath or affirmation, and par-ticularly describing the place to be searched, and the persons or things to be seized" has been effectively swallowed by a further extension of the *Leon* and *Wilmoth* holdings.

Lastly, it is my fervent hope that the high court which decided *Leon, supra,* will address the holding rendered today and reverse this ruling, thereby restoring probable cause as a necessary antecedent to the acquisition of a valid search warrant. In my view, the Constitutions of the United States and Ohio demand no less.

For these reasons, I would affirm the decision of the court of appeals below.