DECISION
A Franklin County Court of Common Pleas Grand Jury indicted appellee, Joseph Willie Barnes, on one count of possessing cocaine and one count of possessing heroine. Appellee's indictment was based upon evidence acquired from a search of his home conducted pursuant to a search warrant. Appellee filed a motion to suppress this evidence which the trial court granted after conducting a hearing. Appellant, state of Ohio, appeals the decision of the trial court and presents the following two assignments of error:
ASSIGNMENT OF ERROR ONE
 THE COURT ERRONEOUSLY GRANTED APPELLEE'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT.
 ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT ERRED IN REFUSING TO ADMIT INTO EVIDENCE THE STATE'S EXHIBIT ENTITLED "WARRANT TO SEARCH."
On September 23, 1998, Columbus Police Detective Lisa Brown applied for a search warrant of appellee's apartment to search and seize evidence of the illegal sale and consumption of beer and intoxicating liquor and cocaine. An affidavit completed by Brown was the only evidence presented in support of the search warrant; it provides as follows:
 The facts [upon] which such belief is based are as follows: PURSUANT TO A VICE COMPLAINT ALLEGING THE ILLEGAL SALES OF ALCOHOLIC BEVERAGES AT 890 McALLISTER AVE. APT. C., COLUMBUS, OHIO. THE ESTABLISHMENT KNOWN ONLY AS 890 McALLISTER AVE. APT. C. VICE OFFICERS LISA BROWN #2068 AND DARRYL McKISSICK #1627, CONDUCTED VISUAL SURVEILLANCE IN A COVERT CAPACITY AND OBSERVED FOOT TRAFFIC ENTERING THE PREMISES WHICH INDICATED THAT THE PREMISES WAS OPEN FOR BUSINESS. ON SATURDAY, SEPTEMBER 12, 1998, AT APPROX. 8:30 P.M., OFFICER BROWN ENTERED THE SAID PREMISES BY RINGING THE OUTER SECURITY DOOR BELL. OFFICER BROWN WAS GREETED BY A F/B, EARLY 30'S, APPROX. 5' 5", 120 LBS., LATER IDENTIFYING HERSELF AS BEV. AFTER A BRIEF CONVERSATION WITH BEV SHE THEN DIRECTED OFFICER BROWN TO THE UPSTAIRS APARTMENT C. UPON KNOCKING, A M/B, LATE 60'S, EARLY 70'S, APPROX. 5' 11" — 5' 12", 170 LBS., IDENTIFYING HIMSELF LATER AS JOE, INVITED OFFICER BROWN INTO THE APARTMENT, AFTER A BRIEF CONVERSATION ABOUT HIS DECEASED WIFE. JOE THEN SERVED OFFICER BROWN A 16 OZ. COLT 45 FOR THE PRICE OF $1.00. OFFICER BROWN OBSERVED WHAT APPEARED TO BE CRACK COCAINE ON THE LIVING ROOM TABLE OF THE APARTMENT. OFFICER BROWN EXITED THE PREMISES WITH A SAMPLE. THE SAMPLE WAS TAKEN TO THE PROPERTY ROOM #98015529. UPON COMPLETION OF ANALYSIS TEST, SAMPLE TESTED POSITIVE FOR CONTENTS OF ALCOHOL DEFINED BY LAW. A CHECK WITH THE OHIO DEPT. OF LIQUOR ENFORCEMENT FILES INDICATE THAT NO PERMIT WAS ENFORCED AT THE TIME THE SAMPLE WAS OBTAINED.
Detective Brown and Detective Darryl McKissick testified at the hearing on the motion to suppress. Brown's testimony provided information that was not contained in the affidavit, including the fact that the vice complaint was received on July 21, 1998, and that, before September 12, 1998, Brown and her partner, McKissick, had observed appellee's building on July 26, 1998 and September 1, 1998, and observed heavy foot traffic both times. Appellee's apartment was on the second floor of a two-story brick building containing four apartments. Brown's testimony also revealed details of her conversation with Bev, the woman who admitted her into the building by opening the security door. Bev told Brown that she was not open for business at that time but that appellee was upstairs. Brown went to appellee's apartment and stated she was there to meet a friend; appellee apparently did not know Brown's alleged friend but invited her to sit on the porch. After discussing appellee's deceased wife, appellee offered Brown a beer for which she paid $1. The record does not indicate whether appellee demanded payment for the beer or whether it was simply offered by Brown. Both Brown and McKissick, who also testified, conceded that they only observed foot traffic enter the building and they could not see which apartment generated the traffic.
At the close of testimony, the trial court admitted the application to obtain a search warrant signed by the judge but did not admit the actual warrant that was issued because it had not been filed with the court.
After hearing arguments on the motion to suppress, the trial court sustained the motion and identified the following bases for her decision: (1) the state's reliance on supplemental information not included in the affidavit to support the validity of the search warrant; (2) the state's failure to produce case law that a ten-day delay, when highly disposable property such as drugs and alcohol are involved, does not create a staleness issue, and appellee's production of case law to the effect that a ten-day delay in such a situation poses a staleness problem; (3) the officers' testimony indicating their knowledge that another boot joint might have been operating in the same apartment building and, thus, could have been responsible for the foot traffic; (4) the state's failure to give a reason for the ten-day delay in filing the application; and (5) the failure to file the search warrant and, thus, the inability to get the warrant introduced into evidence. In its written decision and entry, the trial court stated that it found the motion to suppress well-taken and sustained it for a number of reasons, including, but not limited to, staleness and the fact that the search warrant had not been filed as mandated by Crim.R. 41.
Under its first assignment of error, appellant asserts that the trial court erroneously granted appellee's motion to suppress. Appellee's motion to suppress asserted that the search warrant was issued without probable cause and in violation of his constitutional rights, including his Fourth Amendment rights. The Fourth Amendment guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. The exclusion of evidence is a judicially created sanction employed when Fourth Amendment violations occur. State v. Klosterman (1996), 114 Ohio App.3d 327,331.
At issue in the present appeal is whether the trial court properly excluded evidence found in the search of appellee's apartment based on its finding that there was no probable cause to issue the warrant. State v. George (1989), 45 Ohio St.3d 325.
When determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the issuing judge or magistrate is to make a common sense assessment and decide, based on all the circumstances set forth in the affidavit including the veracity and basis of knowledge of persons supplying hearsay information, whether "`there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" George, at paragraph one of the syllabus. The duty of both trial and appellate courts, when they review the sufficiency of probable cause supporting an affidavit, "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." George, at paragraph two of the syllabus.
Appellant argues that the trial court erroneously found information in the affidavit to be stale and, therefore, erroneously concluded that the affidavit did not establish probable cause.
"Because probable cause to search `is concerned with facts relating to a presently existing condition,' *** there arises the `unique problem of whether the probable cause which once existed has grown "stale."'" United States v. Spikes (C.A.6, 1998), 158 F.3d 913, 923. Consequently, a basic requirement of the law of search and seizure is that an affidavit for a search warrant presents timely information. State v. Jones (1991),72 Ohio App.3d 522, 526. Whether information is timely is to be determined by the circumstances of the particular case and not pursuant to an arbitrary time limit. Id. The key issue is whether the alleged facts "justify the conclusion that the subject contraband is probably on the person or premises to be searched."Id. Variables to consider include how perishable the item to be seized is and whether the information in the affidavit relates to a single isolated incident or a protracted ongoing criminal activity. State v. Floyd (Mar. 29, 1996), Darke App. No. 1389, unreported.
Appellant argues that the officers had information that appellee was running a boot joint (an after-hours bar or an establishment that does not have a liquor permit) and that this is by nature an ongoing activity. Appellee counters that the affidavit contains no proper allegations of any ongoing illegal activity in appellee's apartment. This court finds appellee's position persuasive. A review of the affidavit establishes that Brown's personal observations do not include observations of ongoing activities involving appellee's apartment. Significantly, there is no indication of how often or when the foot traffic was observed, the September 12, 1998 incident was the only time when beer was purchased and there are no observations that appellee's apartment was arranged in a manner to facilitate the operation of a boot joint, such as the presence of tables and chairs.
State v. Lahmers (Feb. 14, 1995), Tuscarawas App. No. 94AP080056, unreported, supports appellee's position. In Lahmers, the court determined that a statement indicating that drugs would be found in the defendant's residence did not provide a substantial basis for concluding that there was a fair probability that the drugs would be found at the time the warrant was issued ten days later. Accordingly, because the statement relied upon was stale, the warrant did not support a finding of probable cause.
Based upon the fact that the affidavit relies on the presence of crack cocaine and the illegal sale of alcohol in appellee's apartment, but does not contain evidence indicating that there was ongoing criminal activity surrounding the cocaine and illegal sale of alcohol, the trial court did not err when it determined that evidence in support of the warrant was stale and could not provide the substantial basis needed for a probable cause finding.
Alternatively, appellant argues that, if there was no probable cause for the search warrant, the trial court erred when it refused to apply the good-faith exception to the exclusionary rule. Pursuant to the good-faith exception, the exclusionary rule is not applied to evidence obtained by officers "acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." George, at paragraph three of the syllabus. The good-faith inquiry is confined to the four corners of the affidavit and the officer claiming a good-faith reliance is presumed to have a certain minimal level of knowledge of what the law requires. Klosterman, at 333. Thus, the ultimate question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."Klosterman, at 332.
Because the officer's reliance must be objectively reasonable, the good-faith exception is not applied in certain situations, including when the affiant knew the information in the affidavit was false, or but for a reckless disregard for the truth would have known the information to be false, when the affiant misled the magistrate or judge or, when the warrant is based on an affidavit "`so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" George, at 331.
Although Brown and McKissick testified that they did not falsify information in the affidavit and that they relied on the warrant's authenticity, they both knew that a second boot joint might be operating in appellee's building and admitted that they could not see from where the foot traffic came and went in appellee's building; however, this information was not included in the affidavit. Had this exculpatory information been included in the affidavit, the affidavit's observations regarding foot traffic would not support a finding by a fair probability that the traffic went to appellee's apartment.
At oral argument, appellant argued that the officers' ten-day delay was in good faith because it was due to a department policy. Specifically, a department policy requires that, before applying for a search warrant, officers need to obtain certification from the Department of Liquor Control that the place to be searched is not authorized to sell liquor. Appellant contends that the officers sought the warrant the same day they received the certification. Unfortunately, the record does not support this argument. Although Brown testified that she had to request the certification, there is no testimony or other evidence indicating when the request was made and when the certification was received.
Taking into account both the stale information and the omission from the affidavit of exculpatory information, the trial court properly refused to apply the good-faith exception in the present case.
Appellant has also contended that the trial court erroneously placed the burden of proof on it, both as to whether the search warrant was proper and as to applicability of the good-faith exception.
Appellant is correct that, when the motion to suppress attacks the validity of a search conducted under a warrant, the defendant bears the burden of proof. State v. Parks (Sept. 3, 1987), Ross App. No. 1306, unreported. Appellant's contention that the trial court placed the burden of proof on it is based upon the trial court's comment near the beginning of the hearing that appellant bore the burden of proof. Because appellant failed to object to the trial court's burden of proof comment when it was made, absent a showing of plain error, appellant has waived this issue on appeal. State v. Biros (1997), 78 Ohio St.3d 426, 437.
A review of the hearing transcript indicates that appellee supplied evidence supporting his positions that there was no probable cause for the search warrant and that the good-faith exclusion should not apply. Consequently, had the trial court properly put the burden of proof on appellee, the outcome would have been the same. As to the good-faith exception, appellant bore the burden of proving that the officers acted in good faith.Klosterman, at 333. Accepting appellant's contention that appellee bore the burden of proving an exclusion to the good-faith exception, appellee met any such burden. Specifically, appellee established that the officers omitted evidence from the affidavit, thereby strengthening the affidavit's presentation in support of finding probable cause.
Finally, because the trial court's determination that the evidence in the affidavit in support of probable cause was stale independently justifies excluding the evidence obtained from the search of appellee's apartment, any error by the trial court in alternatively basing its decision on the fact that the warrant was not filed is non-prejudicial.
For the above reasons, appellant's first assignment of error is overruled.
In its second assignment of error, appellant asserts that the trial court erred when it refused to admit into evidence appellant's exhibit entitled "warrant to search."
The trial court's decision to suppress the evidence obtained from the search of appellee's apartment was based on the fact that the affidavit in support of the search warrant did not support a finding of probable cause. This court has already noted that any error by the trial court in citing the failure to admit the warrant into evidence as a basis for granting the motion to suppress is non-prejudicial. Accordingly, any error on the part of the trial court in refusing to admit the warrant was non-prejudicial. Accordingly, appellant's second assignment of error is overruled.
For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and BRYANT, JJ., concur.