OPINION
Defendant, Gregory L. Harris, appeals from his conviction and sentence for possession of cocaine and crack cocaine, which were entered on his pleas of no contest after the court overruled Harris's motion to suppress evidence.
The evidence that Harris sought to suppress was seized by police in a search of his residence. The search was performed pursuant to a warrant. Harris argued in the trial court that the affidavit on which the warrant issued was insufficient to demonstrate probable cause. His assignment of error in that same respect states:
 THE TRIAL COURT SHOULD HAVE SUSTAINED THE MOTION TO SUPPRESS BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FAILED TO PROVIDE PROBABLE CAUSE, AND A REASONABLE POLICE OFFICER SHOULD HAVE KNOWN THAT PROBABLE CAUSE WAS LACKING.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution state that "no warrant shall issue but upon probable cause, supported by oath or affirmation[.] * * *" In issuing a search warrant "[t]he task of the magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1983), 462 U.S. 213, 238,103 S.Ct. 2317, 76 L.Ed.2d 527. See also, State v. George (1989),45 Ohio St.3d 325, 329, 544 N.E.2d 640. An informant's veracity,reliability and basis of knowledge are highly relevant factors to theprobable cause determination. Gates, supra, at 320. However, thosefactors are not separate and independent requirements but, rather,"intertwined issues that may usefully illuminate the commonsense,practical question whether there is `probable cause' to believe thatcontraband or evidence is located in a particular place." Id.Accordingly, an informant's tip may be reliable despite the deficiency inone factor where there is a strong showing of another factor or someother indicia of reliability. Id. at 233.
The affidavit submitted by the applicant for the warrant to search defendant's residence states:
 On or about September 12, 2000[,] I received information that illegal drug sales were occurring from 1266 Staley Ave. * * *
 On or about September 22, 2000[,] I went to 1266 Staley Ave. with a confidential and reliable informant in an attempt to make a controlled buy of crack cocaine. This informant has provided information that has been proven true through independent investigation that has resulted in the issuance of search warrants with the recovery of drugs, money, weapons, and ultimately led to arrests.
 The informant was checked for drugs and money and none was found. The informant was given a sum of money from the Dayton Police buy fund and directed to 1266 Staley Ave. I observed the informant walk directly to the rear door of 1266 Staley Ave. After about five minutes, the informant returned directly back to my vehicle. The informant then turned over to me a quantity of suspected crack cocaine. I then checked the informant for additional drugs or money and none was found.
 The informant stated that he knocked on the rear door of 1266 Staley Ave. and a [black male] met him at the rear door. * * * The informant purchased the crack cocaine from the above described suspect.
 The crack cocaine I recovered from the informant had the same color and consistency as crack cocaine I have recovered in the past as a Police officer. I then field-tested the suspected crack cocaine with Cobalt reagent with positive results. * * *
 On or about September 28, 2000[,] I returned with a confidential and reliable informant to 1266 Staley Ave. * * * This informant has provided information that has been proven true through independent investigation that has resulted in the issuance of search warrants and the recovery of drugs, money, weapons and ultimately led to arrests. The informant was checked prior to the buy for drugs and money and none were found. The informant was then given a sum of money in the amount of money from the Dayton Police Department Buy Fund. I then observed the informant walk directly to the rear entrance door of 1266 Staley Ave. The informant was inside the apartment for approximately five minutes and then exited and returned directly to my vehicle. The informant then turned over to me a quantity of suspected crack cocaine. I then checked the informant for additional drugs or money and none was found.
 This informant stated that he knocked at the rear door of 1266 Staley Ave. and also was met by a [black male] at the back door[.] * * * The informant purchased the crack cocaine from the described suspect in the search warrant.
 The crack cocaine I recovered from the informant had the same color and consistency as crack cocaine I have recovered in the past as police Officer [sic]. I field-tested the suspected crack cocaine with Cobalt reagent with positive results. * * *
Independent investigation:
 Throughout this investigation, I have conducted surveillance on this residence and have observed pedestrian and vehicular traffic coming and going from the apartment in a manner that is consistent with that of operating drug houses I have investigated in the past. On each occasion, subjects would come to the house, enter through the rear entrance door, stay inside only a few moments, then exit the apartment and leave the area. I have received information from a confidential and reliable informant that this apartment is used solely for the purpose of conducting drug sales and suspects involved simply use the apartment to conduct the business and then leave to go home. This informant has provided information in the past that has been proven true through independent investigation. The subject named in the warrant was positively identified through DPD photos by the informant.
* * *
 The activity is heaviest during the nighttime hours. The controlled buys and a majority of the surveillance were conducted during the nighttime hours., Defendant-appellant argues that these representations were too ambiguous; that describing the person or persons who assisted the officer a "confidential informant" demonstrates nothing, in and of itself, and that the facts which the affiant witnessed are insufficiently conclusive. For example, the affiant didn't say, and had no personal knowledge of, what had happened while the informant was inside the house.
It matters not whether one, or perhaps two, confidential informants were used on the two separate occasions, or whether those persons were "confidential informants" at all. The term, which we're told was devised by the late J. Edgar Hoover, is employed to demonstrate the reliability of information given to an affiant by a source on which the affiant relies when the source lacks direct knowledge of the matters involved. It's not used for that purpose here.
The affiant relied on his own knowledge to describe how the "confidential informant" entered the apartment, with money but no drugs, and shortly thereafter emerged with drugs but no money, and that it happened on two occasions. The affiant also set out his own observations of the location and the significance of those observations. These direct observations of the affiant were fully sufficient to demonstrate probable cause that drugs were being sold at the location, and would likely be found there in a subsequent search. Therefore, the trial court did not err when it denied defendant-appellant's motion to suppress.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.