[Cite as *State v. Boyd*, 2011-Ohio-3721.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

STATE OF OHIO                           :

                            :       Appellate Case No. 2010-CA-15

       Plaintiff-Appellee            :

                            :       Trial Court Case No. 09-CR-168

v.                                      :

                            :       (Criminal Appeal from

LENTON BOYD                             :       Common Pleas Court)

                            :

       Defendant-Appellant         :

                            :

. . . . . . . . . .

## O P I N I O N

Rendered on the 29th day of July, 2011.

. . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg.
#0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
        Attorneys for Plaintiff-Appellee

JAY A. ADAMS, Atty Reg. #0072135, 424 Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1}   Lenton Boyd appeals from his conviction and sentence following a no-contest

plea to one count of complicity to trafficking in marijuana, a third-degree felony.

{¶ 2}   In his sole assignment of error, Boyd contends the trial court erred in

overruling a suppression motion he filed prior to entering his plea. The only issue before us is

whether a police detective's affidavit sufficiently established probable cause to justify issuing a search warrant.

{¶ 3} The record reflects that detective Joshua Julian appeared before a Dayton Municipal Court judge on March 6, 2009 and requested a warrant to search105 Riegel Street for marijuana. In support of the request, Julian provided an affidavit. After setting forth his qualifications, he averred as follows:

{¶ 4} "2. The Greene County Agencies for Combined Enforcement has been investigating the illicit sales and possession of large quantities of marihuana throughout the greater Greene County area. A reliable and credible Confidential Informant, hereinafter referred to as CS #1 advised that he/she has been distributing marihuana throughout the Greene County area and the marihuana has been supplied to CS #1 by a[n] individual identified as, 'D.J.' On or about February 20, 2009 approximately two pounds of marihuana and $6000 were obtained from CS #1. CS #1 advised that the marihuana located came from an individual named 'D.J.'

{¶ 5} "3. On or about March 3, 2009, CS #1 advised the Affiant that a subject known to CS #1 as 'D.J.' was selling pounds of marihuana in the City of Dayton. The Affiant took CS #1 to a residence in the City of Dayton in which CS #1 advised was the residence where he/she had been purchasing the pounds of marihuana. The residence was identified as 105 Riegel Street, Dayton, Ohio 45408. The Affiant observed a 2005 Chevrolet Avalanche, silver in color, bearing Ohio registration EOB 7866. The Affiant checked the Ohio Law Enforcement Gateway System, hereinafter referred to as, (OHLEG). The OHLEG system advised the registered owner of that vehicle was, Nyoka Walker. CS #1 has provided

information to the Affiant and other members of law enforcement in the past which has been corroborated by independent investigation as being credible and reliable.

**{¶ 6}** "4. On or about March 3, 2009, Director Bruce May checked the Dayton Management Information System and located that Nyoka Walker was a girlfriend of Lenton Boyd. The Affiant checked OHLEG and it advised that Lenton Boyd provided 105 Riegel Street, Dayton, Ohio on his state drivers' license.

**{¶ 7}** "5. On or about March 3, 2009, the Affiant assisted by other law enforcement officers monitored CS #1 as he/she made a recorded phone call to 'D.J.' and they talked about purchasing multiple pounds of marihuana for $1125.00 a pound. On or about March 3, 2009, the Affiant searched the Ohio Law Enforcement Gateway system and observed that an individual identified as Lenton Boyd, Jr. provided this address on his Ohio Drivers License.

**{¶ 8}** "6. The Affiant assisted by other law enforcement officers monitored CS #1 on or about March 4, 2009 as he/she arrived at the residence of 105 Riegel Street, Dayton, Ohio. The C/I was driven to the residence by Detective Richard Miller. Once at the residence a black male identified as Lenton Boyd exited a 2006 Cadillac DTS, black in color bearing Ohio registration R507545 and enter[ed] into the residence of 105 Riegel Street. Boyd was in the residence for a short period of time and came back and got into the drivers side of the Cadillac. After a few seconds a second black male subject exited the front passenger side of the Cadillac and walked back to the U/C vehicle. This individual was identified as 'D.J.' by CS #1. 'D.J.' entered into the rear seat of the U/C vehicle and identified himself [as] 'D.J.' to Detective Miller. CS #1 handed 'D.J.' the previously photocopied $1300 and D.J. gave CS #1 a pound quantity of a substance purported to be marihuana. 'D.J.' then exited the U/C vehicle

and went back to the 2006 Cadillac and entered back into the front passenger side. CS #1 was searched prior to and after the transaction and no contraband or money was found. The Affiant conducted a marihuana field test on the suspected substance with positive results for marihuana.

{¶ 9}  "7. On March 5, 2009, the Affiant located that Lenton Boyd was arrested in 2002 for trafficking in crack cocaine by the Greene County Agencies for Combined Enforcement. When Boyd was arrested in 2002, he was accompanied by James Catlin. James Catlin was identified as the subject that represented himself as 'D.J.'

{¶ 10} "8. The Affiant knows from prior experience and training that drug traffickers commonly use multiple locations and/or dwellings to store large amounts of drugs and illegal drug proceeds. Affiant also knows from prior experience and training that drug traffickers commonly use names other than their own when renting apartments and registering vehicles, to avoid detection by law enforcement. Affiant also knows from prior experience and training that drug traffickers commonly utilize girlfriends and or common law wives to store their safes, property and drugs to avoid detection by law enforcement.

{¶ 11} "9. Based upon the above facts and beliefs, and in my experience and in the experience of other members of the Greene County A.C.E. Task Force, traffickers in controlled substances frequently use multiple addresses and vehicles, which are registered in other individuals' names. This is done in order to protect their criminal enterprise. Furthermore, they routinely have weapons in or near areas where narcotic sales are made. Additionally they often use portable pagers, cellular telephones, and telephone answering machines as a means of contacting one another. Traffickers also frequently have ledgers or

books indicating sources, amounts, and sales. Cash is also frequently found in larger than usual amounts. Video and audio surveillance equipment is often used to monitor movement of people and vehicles around where sales are made. Affiant requests that a Warrant be issued to the proper police authority authorizing a personal search of the above described residence and vehicles for said items of property; and, if said items of property or any part thereof, are found in the place(s) or in things described, authority is requested to seize said items of property which may be found."

{¶ 12} After reviewing the affidavit, the municipal court judge issued a search warrant for 105 Riegel Street based on a finding of probable cause to believe contraband was located there. Police executed the warrant and found incriminating evidence inside the home. Following his indictment, Boyd moved to suppress the evidence based on the alleged failure of detective Julian's affidavit to establish probable cause. The trial court overruled the motion, concluding that the municipal court judge properly had found probable cause to issue a search warrant. In overruling the motion, the trial court reasoned:

{¶ 13} "The affidavit given to the judge states marijuana was purchased at Boyd's home in February. The police then had a confidential informant purchase more drugs at Boyd's home less than a fortnight later. The affidavit shows that Boyd listed that address on his driving license and that a reliable confidential informant stated Boyd was a drug dealer. Boyd, the affidavit states, had also been arrested before on cocaine charges.

{¶ 14} "The affidavit states that when the police arranged their controlled purchase Boyd talked to the confidential informant in his car, then went into his home, and returned to the car, whereupon the drugs were delivered to the informant. While the affidavit does not

state that Boyd was carrying things from the house to the car, that would be a reasonable inference, that he brought the drugs from his house to the car for delivery.[1] The fact that the drugs were delivered just outside his house combined with the information that drugs were sold there in the recent past is probable cause to suggest that drugs and evidence of dealing in them would be found in the house."

{¶ 15} On appeal, Boyd disputes whether detective Julian's affidavit was sufficient to establish probable cause. He claims the trial court's decision essentially rested on four findings: "(1) that marijuana was purchased at the home of Mr. Boyd in February; (2) that the police had a confidential informant purchase more drugs at the home of Boyd later; (3) That Boyd lived at the address in question and that Boyd was a drug dealer; and (4) that when police arranged their controlled buy that the confidential informant talked to Boyd, Boyd then went into his house and returned to the car where after (sic) drugs were delivered to the confidential informant." Brief of Appellant pg. 5. Boyd contends nothing in detective Julian's affidavit supports the first or second finding. With regard to the third finding, Boyd claims it is entitled to little weight as it does nothing to establish probable cause. Finally, concerning the fourth finding, Boyd asserts that nothing in the affidavit establishes that he retrieved drugs from his house at the time of the controlled buy.

{¶ 16} Upon review, we find no error in the trial court's suppression ruling. "In determining the sufficiency of probable cause in an affidavit submitted in support of a search

---

[1] The trial court's rendition of the affidavit is partially inaccurate. At 105 Riegel St. on March 4, 2009 for the controlled buy, the defendant got out of a vehicle, went into his house, returned to that vehicle, and then the other subject in that vehicle exited and brought the pound quantity of marijuana to the undercover vehicle where the transaction took place. The defendant did not talk to the informant in his car, and the defendant did not directly deliver drugs to the informant. However, we do not perceive this technical factual inaccuracy to be of significance in our decision or that of the trial court.

warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George* (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, following and quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238-239.

{¶ 17} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus (citation omitted).

{¶ 18} We note too that "[t]he Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." Id. at paragraph three of the syllabus (citation omitted). The rationale for this "good-faith" exception is that when police have acted in good faith on a warrant issued by a judge or magistrate, there is no police

misconduct and, thus, nothing to deter. Id. at 331. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination[.] * * * Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. Leon* (1984), 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677. Nevertheless, an officer's reliance on a magistrate's probable-cause determination must be objectively reasonable. *George*, 45 Ohio St.3d at 331. Suppression remains proper "where (1) '* * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *'; (2) '* * * the issuing magistrate wholly abandoned his judicial role * * *'; (3) an officer purports to rely upon '* * * a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" '; or (4) '* * * depending on the circumstances of the particular case, a warrant may be so facially deficient–*i.e.*, in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid." Id., quoting *Leon*, supra, at 923.

{¶ 19} In the present case, the municipal court judge had a substantial basis for concluding that probable cause existed. Detective Julian's affidavit established that CS #1 was known to police and previously had provided corroborated, reliable information. In paragraph two, Julian averred that in late February 2009, CS #1 provided police with approximately two pounds of marijuana, which had been obtained from a person identified as D.J. In paragraph three, Julian averred that on March 3, 2009, CS #1 identified Boyd's residence, 105 Riegel Street, as the place where CS #1 had been purchasing pounds of marijuana. Paragraphs four

and five provided further information establishing that 105 Riegel Street was Boyd's residence.

{¶ 20} In paragraph six, detective Julian described a controlled drug buy that he witnessed on March 4, 2009. Julian averred that he watched CS #1 and another detective arrive at 105 Riegel Street by car. According to Julian, Boyd then exited a black Cadillac and entered his residence for a short time. After Boyd got back into the Cadillac, D.J. exited it and walked to the car in which CS #1 was waiting. CS #1 purchased a pound of marijuana from D.J. in exchange for cash. D.J. then returned to the Cadillac where Boyd was waiting. In paragraph seven, Julian averred that Boyd previously had been arrested for drug trafficking and identified "D.J." as James Catlin, a known companion of Boyd's.

{¶ 21} Based upon CS #1's admission that he recently had purchased pounds of marijuana from Boyd's residence and the circumstances of the controlled buy, the municipal court judge reasonably could have inferred that Boyd entered his residence on March 4, 2009 to retrieve marijuana to sell to CS #1. The quantity of marijuana involved in the drug sales to CS #1 made it particularly reasonable for the municipal court judge to conclude that additional marijuana likely remained inside the residence at 105 Riegel Street.

{¶ 22} Even assuming, purely arguendo, that probable cause were lacking in the present case, we would find *Leon's* good-faith exception applicable. There is no evidence that police misled the municipal court judge, that the municipal court judge wholly abandoned the judicial role, or that detective Julian's affidavit was so lacking in indicia of probable cause as to make belief in its existence unreasonable.

{¶ 23} Boyd's assignment of error is overruled, and the judgment of the Greene

County Common Pleas Court is affirmed.

. . . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Jay A. Adams
Hon. Stephen Wolaver