OPINION
The defendant-appellant, Jeremy A. Johnson ("the appellant"), appeals the judgments of conviction and sentence of the Crawford County Court of Common Pleas. For the following reasons, we affirm the judgments of the trial court.
The pertinent facts and procedural history of the cases are as follows. In February and March 1999, the appellant was indicted on thirty counts of receiving stolen property, in violation of R.C. 2913.51. The grand jury indictments were the result of a criminal investigation of the appellant by the Crawford County Sheriff's Office. The criminal investigation began on January 25, 1999, after the Sheriff's Department received a dispatch report of an alleged shoplifter at the Star Time Video store, located in Galion, Ohio. Deputy Sheriff Jeremy Piper and Deputy Sheriff Derrick Sqrow responded to the report.
Upon arriving at the store, the store clerk informed the deputies that the alleged shoplifter was located in the "adult" section of the video store. The deputies decided to delay the investigation until the suspect attempted to leave the store. Approximately fifteen minutes after they arrived at the store, the deputies observed the appellant emerge from the adult section of the store. At that time, Deputy Piper observed what appeared to be the shape of videotapes protruding from underneath the appellant's jacket. Deputy Sqrow also observed a bulge under each arm of the appellant's jacket. Deputy Sqrow eventually performed a pat-down search of the appellant for weapons. At that time, Deputy Sqrow observed what appeared to be two videotapes protruding from the appellant's jacket. Two videotapes were then seized from the appellant.
The store clerk later verified that both of the videotapes were on the store's inventory list. The appellant was placed under arrest for theft of the videotapes.
On January 27, 1999, Deputy Piper learned from Crawford County Auxiliary Deputy Sheriff Jerry McGregor that the appellant had a large collection of adult videotapes in his home. Deputy McGregor informed Deputy Piper that he was a friend of the appellant, and that he had borrowed three of the videotapes from the appellant. Deputy McGregor gave two of the videotapes to Deputy Piper. Deputy Piper took the videotapes to Star Video and learned that one of the missing videotapes matched, by title, a videotape that Deputy McGregor had borrowed from the appellant.
As a result of the investigation, Deputy Piper obtained a search warrant, filed on January 28, 1999, to search the appellant's premises located in Galion, Ohio, for the store's missing videotapes. The search warrant, issued by Judge Michael A. Kennedy of the Crawford County Municipal Court, authorized a search of the appellant's premises, including his home and vehicle, for the videotapes listed in the warrant.[1]
On the afternoon of January 28, 1999, the Crawford County Sheriff's Office executed a search of the appellant's premises. Detective Sergeant James Davis of the Crawford County Sheriff's Department read the appellant his Miranda rights and served him with a copy of the search warrant.[2] At the time of the search, in plain view, the officers observed "hundreds" of items, including tools, power equipment, and electronic items scattered throughout the home. According to the officers, many of the items were in excellent condition. In fact, many of the items were in their original packaging.
During the search of the appellant's bedroom for the missing videotapes, Detective Davis discovered a piece of electrical equipment underneath the appellant's bed. Detective Davis wrote down the item's serial number on a pad of paper. Detective Davis then put the item back underneath the bed. Shortly thereafter, Deputy Piper discovered a box containing ninety videotapes in the back seat of the appellant's vehicle. The videotapes were seized.
Later that evening Crawford County Sheriff Ronny Shawber and Major Michael D. Castor of the Crawford County Sheriff's Department obtained a second search warrant of the appellant's premises. The second search warrant authorized a search of the appellant's home and vehicle for the tools, power equipment, and electronic items the investigating officers had observed on the appellant's premises. On or about 11:00 p.m., the Crawford County Sheriff's Office executed the second search of the appellant's premises. The investigating officers seized many of the items set forth within the search warrant.
On January 27, 1999, a misdemeanor shoplifting complaint was filed in the Crawford County Municipal Court. The misdemeanor complaint was the result of the appellant's theft of the two videotapes from the Star Video store on January 25, 1999.
On February 9, 1999, the appellant was indicted by the Crawford County Grand Jury on twenty counts of receiving stolen property, in violation of R.C. 2913.51 (Case No. 3-2000-15). The indictment was the result of the criminal investigation of the appellant for the theft of certain tools, equipment, and electrical items from North Central Technical College, where the appellant had been a student. On February 24, 1999, the appellant's attorney filed a motion to merge the misdemeanor complaint with the indictment dated February 9, 1999. On March 5, 1999, the misdemeanor complaint was merged with the indictment of February 9, 1999.
On March 8, 1999, the appellant was indicted by the Crawford County Grand Jury on ten counts of receiving stolen property, in violation of R.C. 2913.51 (Case No. 3-2000-16). The indictment was the result of the criminal investigation of the appellant for the theft of certain tools, equipment, and electronic items from North Central Technical College, Stark State College of Technology, and several other private businesses.
In Case No. 3-2000-15, the appellant pleaded no contest to nineteen counts of receiving stolen property and one count of shoplifting. In Case No. 3-2000-16, the appellant pleaded no contest to nine counts of receiving stolen property. In total, the trial court found the appellant guilty of twenty-eight counts of receiving stolen property and one count of shoplifting.
A sentencing hearing was held on May 15, 2000. At the hearing, the appellant was sentenced to two consecutive twelve-month terms of imprisonment. The appellant also was sentenced to a six-month term of imprisonment for the shoplifting offense, which was ordered to run concurrently to the consecutive sentences. In total, the appellant was sentenced to a term of imprisonment of twenty-four months.
The appellant now appeals, asserting four assignments of error for our review.
 Assignment of Error No. I The trial court erred in overruling the motion to suppress the fruits of the search of defendant's belongings, specifically the moving about of the devices to obtain serial numbers.
 Assignment of Error No. II The trial court erred in overruling the motion to suppress the results of a search that was based upon an inadequate affidavit.
In his first and second assignments of error, the appellant maintains that the trial court erred in failing to grant his motion to suppress. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Robinson
(1994), 98 Ohio App.3d 560. Thus, the credibility of witnesses during a motion to suppress hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings for issues of credibility. State v. Mills (1992),62 Ohio St.3d 357; State v. Fanning (1982), 1 Ohio St.3d 19. While the appellate court is bound to accept the findings of fact, which are supported by competent credible evidence, we must determine independently, without any deference to the decision of the trial court, whether the findings of fact meet the appropriate legal standard. State v. Vance (1994), 98 Ohio App.3d 56, 58, citingState v. Williams (1993), 86 Ohio App.3d 37, 41.
For purposes of clarity, we will address the appellant's second assignment of error first.
In his second assignment of error, the appellant maintains that the affidavit filed in support of the initial search warrant of the appellant's premises was insufficient to support a finding of probable cause necessary to issue the warrant. For the following reasons, we do not agree.
A judge or magistrate is generally granted broad discretion to determine whether an affidavit contains sufficient information to justify a finding of probable cause. United States v.Ventresca (1965), 380 U.S. 102, 108-109. The Ohio Supreme Court has made clear that warrants are to be treated preferentially and, therefore, great deference should be shown to the judge or magistrate's decision. State v. George (1989), 45 Ohio St.3d 325. Whether at the trial or the appellate level, judicial scrutiny of the judge or magistrate's decision does not take the form of denovo review. Rather, the role of the reviewing court is only to ensure that the judge or magistrate had a "substantial basis" for concluding that probable cause existed. Id. at 329. Doubtful or marginal cases are to be resolved in favor of upholding the warrant. Id. at 330.
Because there is nothing of record to indicate that the judge issued the search warrant in this case on any additional materials or evidence, the validity of the warrant turns entirely on the contents of the affidavit. State v. Eichorn (1975), 47 Ohio App.2d 227,229. We must now review Deputy Piper's affidavit to determine whether the trial court had a "substantial basis" to conclude there was a fair probability the videotapes mentioned in the affidavit would be found on the appellant's premises. George,45 Ohio St.3d at 330; see, also, State v. Dooloukas (Jan. 25, 1994), Adams App. No. 555, unreported; State v. Ashley (June 11, 1992), Ross App. No. 1910, unreported.
In the case herein, the affiant, Deputy Piper, filed his affidavit with the trial court on January 28, 1999, stating that he and Deputy Sqrow responded to a dispatch report of an alleged shoplifter at the Star Video store on January 25, 1999. At that time, the store clerk informed the deputies that the appellant had been in the adult section of the video store for approximately forty-five minutes and that, on several past occasions, he had visited the store but did not rent a movie.
According to the clerk's statement, while the appellant was in the adult section of the store, she heard what appeared to be the sound of a security sticker being removed from a videotape. Shortly after the appellant's arrest for shoplifting, a Star Video employee discovered thirty-eight security stickers behind a board in the adult section of the store. A list compiled by Star Video later confirmed that thirty-three videotapes were missing from the store's inventory.
On January 27, 1999, Auxiliary Deputy Sheriff Jerry McGregor, a friend of the appellant, informed Deputy Piper that approximately one month prior he had observed a large collection of adult videotapes in the appellant's home. Deputy McGregor informed Deputy Piper that he had borrowed three adult videotapes from the appellant. Deputy McGregor, on his own volition, gave two of the videotapes to Deputy Piper. Deputy Piper took the videotapes to Star Video and discovered that one of the missing videotapes matched, by title, a videotape that Deputy McGregor had borrowed from the appellant.
Based upon the foregoing chain of events, on January 28, 1999, Crawford County Municipal Court Judge Michael Kennedy authorized a search warrant of the appellant's premises. Having reviewed that affidavit in support of the search warrant, we find the trial court had "a substantial basis" to conclude there was a fair probability the videotapes listed in the affidavit would be found on the appellant's premises. Therefore, we find that the issuing judge properly issued the search warrant.[3] In so finding, the trial court did not err in overruling the appellant's motion to suppress with respect to this issue.
In his first assignment of error, the appellant maintains that his Fourth Amendment right to be free from unreasonable searches and seizures was violated because Detective Davis could not have known, or had probable cause to believe, that the item found underneath his bed was reported to have been stolen. In essence, the appellant contends that Detective Davis' general, warrantless search should not have formed the probable cause necessary for the second search warrant.
At the suppression hearing held on February 9, 2000, Detective Davis testified that while executing the initial search warrant, he discovered a piece of electrical equipment underneath the appellant's bed. Detective Davis testified that he pulled the piece of equipment from underneath the appellant's bed, looked at its nomenclature, and wrote down the item's serial number on a pad of paper. Detective Davis then testified that he put the item back underneath the bed. The appellant contends that such action unrelated to the objectives of the authorized intrusion violated his Fourth Amendment right to be free from unreasonable searches and seizures and should not have formed the probable cause necessary for the second search warrant.
The State of Ohio counters that Detective Davis' actions are justified under the plain view exception to the search warrant requirement. The "plain view" doctrine allows police officers, under particular circumstances, to seize an article of incriminating character which is not described in the search warrant. The doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, it's owner's privacy interest in that item is lost. State v.Halczyszak (1986), 25 Ohio St.3d 301, 303. Thus, police may seize evidence, instrumentalities, or fruits of a crime without the necessity of having first obtained a search warrant specifically naming such items. Ker v. California (1964), 374 U.S. 23.
Under the plain view exception to the search warrant requirement, it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent.Halczyszak, 25 Ohio St.3d at 303.
Having reviewed the transcript of the suppression hearing as well as the affidavit filed in support of the search warrant, it is evident that the probable cause which formed the basis for the second search warrant was not predicated upon Detective Davis' search of the item found underneath the appellant's bed. The transcript of the suppression hearing reveals that Detective Davis did not learn that the item had been reported stolen until the morning following both searches of the appellant's premises. At that time, Detective Davis was informed by the Ohio State Highway Patrol that the appellant, a student at North Central Technical College, was a suspect in a string of thefts from the school and that the item found underneath his bed had been reported stolen from the school.
Based upon the above, Detective Davis' actions could not have formed the probable cause necessary for the second search warrant. In fact, the affidavit filed in support of the search warrant reveals the probable cause necessary for the warrant was premised solely upon other circumstances which arose during the initial search of the appellant's premises. For all of the foregoing reasons, we find no merit to the appellant's first assignment of error. In so finding, the trial court did not err in overruling the appellant's motion to suppress with respect to this issue.
Accordingly, the appellant's first and second assignments of error are overruled.
 Assignment of Error No. III The trial court erred in sentencing defendant, where the sentence was based upon passion arising from the defendant's exercise of his constitutional rights.
In his third assignment of error, the appellant maintains that the trial judge sentenced him to a longer term of imprisonment for pursuing his appeals and repeatedly changing counsel during the course of the proceedings. For the following reasons, we do not agree.
At the sentencing hearing held on May 15, 2000, the trial judge stated, in pertinent part, as follows:
 Your standing pleading for mercy. And you're almost telling the Court, well, even though I did enter the no contest plea and even if you found me guilty on it, I wasn't guilty, and I'm going to appeal anything you do. [sic]
 That's your attitude all through this thing, your attitude with the other lawyers, which I cannot take into consideration and I don't. But everything totally in this case, I should say, the tail wagged the dog. It's going to stop, period. [sic]
Although the trial court's remarks may have been inappropriate, the trial judge stated unequivocally that he did not consider the circumstances the appellant complains of in sentencing him to a term of imprisonment of twenty-four months.[4] Because the appellant has failed to demonstrate that he was prejudiced by the trial court's comments, we find no merit to his assignment of error.
Accordingly, the appellant's third assignment of error is not well-taken and is overruled.
 Assignment of Error No. IV The trial court erred in sentencing defendant, where the sentence was based upon the court's erroneous conclusion that the defendant held a position of trust.
In his fourth assignment of error, the appellant argues that in sentencing him to a term of imprisonment, the trial court erred in finding that he had occupied a position of trust when he committed the offenses. For the following reasons, we do not agree.
Pursuant to R.C. 2929.13(B)(1), before a court may impose a prison term for a felony of the fifth degree, the trial court must first determine whether any of the eight factors enumerated in the statute are present. R.C. 2929.13(B)(1) states, in pertinent part, as follows:
 Except as provided in division (B)(2), (E), (F) or (G) of this section, in sentencing an offender for a felony of the * * * fifth degree, the sentencing court shall determine whether any of the following apply:
* * *
 (d) The offender held a public office or position of trust and the offense related to that office or position * * *.
Under R.C. 2929.13(B)(2)(b), if a court does make a finding as to one of the factors prescribed in R.C. 2919.13(B)(1), and the court, after considering the factors set forth in R.C. 2929.12, finds that a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.
In case Nos. 3-2000-15 and 3-2000-16, the appellant pleaded no contest to twenty-eight counts of receiving stolen property, each a felony of the fifth degree. See R.C. 2913.51. At the sentencing hearing held on May 15, 2000, the trial court merged, for purposes of sentencing, the twenty-seven counts relating to the theft of the items from North Central Technical College. The trial court sentenced the appellant to a twelve-month term of imprisonment for these offenses after finding that a prison term was consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and that he was not amenable to an available community control sanction. The trial court also found that, at the time of the offenses, he was in a position of trust pursuant to R.C. 2929.13(B)(1)(d).
In his brief, the appellant alleges that the trial court erred in finding that, at the time of the offenses, he had occupied a position of trust. Specifically, the appellant alleges that the phrase "position of trust" as it is found within R.C.2929.13(B)(1)(d) does not include private individuals but rather "public officials" or "public servants" who hold a public office or position of trust.
In State v. Bolin (Jan. 12, 1998), Clermont App. No. CA97-06-056, unreported, the Twelfth District Court of Appeals examined the issue of whether the phrase "position of trust" as it is found within R.C. 2929.13(B)(1)(d) includes both public and private individuals. In Bolin, the defendant was a truck driver with a shipping company from which he had stolen packages to sell for money. In finding that the defendant occupied a position of trust, the Court in Bolin held, in pertinent part, as follows:
 If the legislature had intended the statute to apply only to public positions of trust, it could have included such language in the statute. There are many `non-public' positions of trust worthy of consideration when determining whether to impose a prison term.
At least two of our sister courts also have found that a private individual can occupy a position of trust. See, e.g.,State v. Flahive (Mar. 29, 1998), Hamilton App. Nos. C-970211 and C-970212, unreported (holding that a store clerk and a hotel clerk occupy a position of trust to its customers); State v. Hall (May 18, 2000), Franklin App. No. 99AP-1145, unreported (holding that a parent holds a position of trust with respect to the child).
We agree with the foregoing authority and also construe the phrase "position of trust" as it is found within R.C.2929.13(B)(1)(d) to include both public and private individuals. Having done so, we must now determine whether the appellant occupied a position of trust at the time of the offenses.
In the case herein, we believe the trial court was correct in holding the appellant occupied a position of trust given his status as a student at the college. As a student, he was entrusted with school property and did deprive other students and faculty of the items found in his possession. Therefore, he occupied a position of trust within the meaning of R.C.2929.13(B)(1)(d).
For all of the foregoing reasons, we find no merit to the appellant's assignment of error. Accordingly, the appellant's fourth and final assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
WALTERS and BRYANT, JJ., concur.
[1] The search warrant listed approximately thirty-three adult videos which were missing from Star Video.
[2] According to Detective Davis' testimony, the appellant was read his Miranda rights on two separate occasions.
[3] We also find the appellant's claim that Deputy McGregor's information was "stale" is without merit.
[4] The appellant also was sentenced to a six month term of imprisonment, to be served concurrently to the consecutive sentences imposed above.