On this appeal from an order of Judge Nancy Margaret Russo, I respectfully dissent. The majority opinion upholding the search warrant issued by Judge Nancy McDonnell and denying the motion to suppress does not meaningfully address Hinkel's argument that the statements in the affidavit were insufficient to show probable cause. The majority, in the name of deference, simply states the conclusion that probable cause to search Hinkel's Cleveland home was properly based on the information gained through the search of Hernon's Brunswick home, thereby avoiding its duty to analyze the information that was actually gained through that search to determine whether it satisfies the threshold of probable cause. This case cannot be decided without first addressing this question.
On March 4, 1998, officers of the federal Drug Enforcement Administration's Drug Task Force initially searched the premises at 3495 Villa Casa Court in Brunswick, Ohio, in Medina County. According to the affidavit in support of the warrant to search that premises, there had been a fourteen-month investigation of Philip M. Hernon, which included six controlled drug purchases, each of which was facilitated by the initial delivery of money to the Villa Casa address, after which drugs were delivered to drug enforcement agents in Phoenix, Arizona. The affidavit made no reference to Hinkel or to a 10620 Fortune Avenue address. The affidavit's only reference to other individuals was the following:
 j. Two separate mail covers on Philip Hernon's address of 3495 Villa Casa Court, Brunswick, Ohio, have revealed numerous pieces of mail bearing return address information of known anabolic steroid users and traffickers.
 k. Pen register information and telephone toll record information pertaining to Philip Hernon's home phone number * * * at 3495 Villa Casa Court, Brunswick, Ohio, has identified known steroid users and traffickers telephoning Philip Hernon as well as being telephoned by Philip Hernon.
After the search of the Villa Casa address, the officers sought a warrant to search 10620 Fortune Avenue on the same day. The Fortune Avenue affidavit stated the following in relevant part:
 1. On March 4, 1998 affiant and other law enforcement personnel executed a search warrant duly issued upon probable cause, on the premises of 3945 [sic] Villa Casa Court, Brunswick, Medina County. A copy of the warrant is attached hereto as Exhibit B and incorporated herein as if fully rewritten.
 2. In the course of their investigation and prior to the execution of the search warrant, affiant and other law enforcement personnel, learned that the suspect, Philip M. Hernon (Hernon), was utilizing the above-referenced address as a return address for several steroid shipments to the western states area. Information of the utilization of the above-listed address was confirmed during the execution of the subject search warrant when documents were discovered and seized confirming Hernon's utilization of the 10620 Fortune Avenue address. As a result of the search of the premises of 3945 [sic] Villa Casa Court, Brunswick, some of the items confiscated included hundreds of viles [sic] of steroids, approximately $10,000 in cash and documents reflecting previous shipping, purchasing and pricing of steriods [sic] and documents reflecting international steriod [sic] vendors and lists of names of [sic] believed to be customers of the suspect.
 3. Notably, it did not appear that the suspect, Hernon, kept any living necessities at the 3495 Villa Casa address.
 4. As a result of the investigation and items discovered and seized during the search warrant, affiant and Special Agent William Leppla, also of the Drug Enforcement Administration, conducted surveillance on the above-referenced premises on March 4, 1998.
 5. Affiant confirmed the residence's existence and that it was a single family dwelling.
 6. A vehicle, 1988 Mercury Cougar, 2-door, brown in color, bearing Ohio registration ALR 5871, was parked in the driveway of the residence on Fortune. Investigation revealed the vehicle is registered to one Jack Hinkle. [sic].
The suppression hearing itself brought forth no further evidence to support the probable cause determination, as the State agreed that the affidavits set forth all the available information. The first allegation is that the officers learned, in investigation prior to the Villa Casa search, that the above-referenced address was being used as a return address for steroid shipments but no facts are stated to support this conclusory statement. The next allegation is that the search of the Villa Casa address uncovered unspecified information confirming Hernon's equally unspecified utilization of the above-listed address but, again, no facts are cited to support this statement, rendering the confirmation as conclusory as the first allegation. Such unsupported conclusory statements do not support probable cause under any standard. Illinois v. Gates (1983), 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527,549 (citing Aguilar v. Texas (1964), 378 U.S. 108, 84 S.Ct. 1509,12 L.Ed.2d 723. The affidavit contains no facts concerning the knowledge gained prior to the Villa Casa search, and no facts explaining what evidence was discovered at the Villa Casa address. The judge asked to issue the warrant was simply asked to accept the conclusions drawn by the officers without seeking any evidence in support. One cannot issue a valid warrant under such circumstances.
Even if one accepts these conclusory statements at face value, the most that can be inferred is that the Fortune Avenue address was utilized as a return address on some of Hernon's steroid shipments, although even this much is unclear. The Fortune Avenue affidavit mentions only the above-referenced address in this regard, a reference that can mean either the Fortune Avenue address, above-referenced as the address sought to be searched, or the Villa Casa address, above-referenced in the immediately previous paragraph of the affidavit.
Regardless of this confusion, the important fact is that the utilization of the Fortune Avenue address is neither clarified nor verified in the affidavit, and the bare utilization alleged is insufficient to find probable cause. Even assuming that Hernon had utilized the Fortune Avenue address as a return address, no reasonable police officer, magistrate, or judge could believe that this information alone led to a fair probability that drugs would be found at that address. Hernon just as easily could have utilized 2374 Tudor Drive, Cleveland Heights, Ohio,[1] as the return address for his drug shipments; no one would seriously argue that such utilization would then give authorities probable cause to search that residence.
The only information even arguably alleged is that Hernon utilized the address as a return address on correspondence; there was no allegation that he utilized the property itself, that he lived there, had ever been to the address, or had any other connection whatsoever with the Fortune Avenue property. Indeed, Hernon could be using a phony return address to avoid detection of his operation. Without stating additional information, the mere fact of a return address does not provide a reasonable basis for believing that drugs would be found there.
The obvious deficiency of the affidavit defeats the majority's call for deference to the findings of the issuing judge. Although we review a search warrant only to determine whether a judge had a substantial basis for determining that probable cause existed, this less demanding standard does not countenance our complete abandonment of review. Gates, supra; see, also, State v. George (1989), 45 Ohio St.3d 325, 333-34,544 N.E.2d 640, 648-49 (Wright, J., concurring). There must be some threshold below which we will not allow a warrant to issue, or we should leave all warrant determinations to the exclusive discretion of the issuing judge.
This is not a close case. Hernon could have written any return address on his drug shipments and the agents could have written the same affidavit. If this is now the standard for finding probable cause, Hernon's use of a telephone book would have implicated an entire city in his criminal scheme.
Because I believe the issuing judge did not have a substantial basis to believe probable cause existed, I must also address whether the law enforcement agents involved had an objective, good faith basis to rely on the validity of the warrant so that the exclusionary rule is inapplicable despite the Fourth Amendment violation. United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; George,45 Ohio St.3d at 330, 544 N.E.2d at 645-46. Although I find it relatively easy to deny the good faith rationale in this case, I think it important to assess the scope of the good faith exception.
Warrants are to issue upon probable cause, and a search pursuant to a warrant based on probable cause is reasonable. The existence of probable cause is not subject to specific definition; we know only that it is something less than the preponderance of evidence standard, and that it exists when there is a fair probability that properly sought evidence will be found in a particular place. Id. at 329, 544 N.E.2d at 644. When assessing facts and circumstances to determine whether probable cause existed, courts are to use common-sense standards to determine the issue based on the totality of circumstances. Id. Due weight is to be given to the law enforcement officer's experience and expertise in detecting crime and recognizing its signs. Texas v. Brown (1983), 460 U.S. 730,103 S.Ct. 1535, 75 L.Ed.2d 502.
Review of probable cause becomes even less stringent when a judge issues a search warrant. In order to encourage officers to seek warrants, a deferential standard of review has been adopted, and a warrant's issuance will be upheld if the affidavit provided a substantial basis for the judge's conclusion that there was a fair probability that evidence of crime would be found. George, 45 Ohio St.3d at 330,544 N.E.2d at 645. (Emphasis sic.) Evidence will not be excluded if the officers executing the search warrant believed in good faith that a substantial basis supported a fair probability that evidence of crime would be found. This is the It's possible that I thought that maybe it could have been strand of common-sense Fourth Amendment jurisprudence.
The Leon good faith test must be viewed in light of the standards already employed in reviewing warrants. If one imagines a continuum between zero probability and fair probability (already a narrow band), it is apparent that there can be little room between the zones demarking substantial basis and objective good faith. Law enforcement officials would seldom have an objective good faith belief in the validity of a warrant that cannot pass the substantial basis test. Just as we consider officers' experience and expertise in making probable cause determinations, we consider the same knowledge when assessing good faith. Leon, 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20,82 L.Ed.2d at 696 n. 20. A reasonably knowledgeable law enforcement officer should have both general and particularized knowledge as to the information necessary to support a warrant. Despite the Leon Court's assertion that an officer's reliance on a warrant would most often be reasonable, Id. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698, I submit that in most situations, one cannot reasonably believe probable cause exists when there is not even a substantial basis to so believe. Without even a substantial basis, the affidavit is by definition so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Id. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. (Citation omitted.)
This case presents no exceptional facts suggesting that it is the rare case in which good faith can be found. An officer presenting such an affidavit to a judge should be able to recognize the need to support the allegations with the facts upon which they are based. A reasonable officer must be aware that an independent judge cannot accept conclusory statements, but must examine the underlying facts. An affidavit such as this, which omits any supporting facts, cannot be the basis of a Leon good-faith claim.
Moreover, officers exercising common sense should have understood that Hernon's use of a return address did not, standing alone, allow the inference that he was in fact using the property and that there was a likelihood that he would use a phony return address on drug shipments, which would mandate that they engage in more investigation about the Fortune Avenue property. Although it is possible that the agents had already done additional investigation of the Fortune Avenue address than is disclosed in the affidavit, we can only assess the allegations contained therein and those allegations are insufficient to infer a fair probability that Hernon was using the Fortune Avenue property to store drugs. Both the officers and the issuing judge should have known it was legally insufficient.
In assessing the officers' good faith and the judge's basis for determining that probable cause existed, it is important to recall the independent requirement that the judge be neutral and detached. An officer cannot reasonably rely on a warrant issued by someone who has abandoned his judicial role and thus is not neutral and detached. Leon, supra. As there would rarely be direct evidence that a judge was not neutral, and even more rarely would an accused have access to such evidence, our review of the issue necessarily would require examination into the basis of the issuing judge's decision.
Neutrality could be called into question whenever a warrant issued without substantial basis, and a lack of neutrality could be inferred when, as here, the allegations of the affidavit are so unclear and insufficient that one can question whether the judge read the affidavit and considered its allegations at any critical level. A good faith justification fails not only because of the obvious lack of any basis for finding probable cause, but because the warrant's issuance in spite of the affidavit's deficiency implicates the lack of independent review.
I would sustain assignments of error one and three and reverse the judgment on that basis. Although I do not disagree with the majority's resolution of the second assignment of error, I would find that assignment moot.
[1] The residence of Steven H. Steinglass, Dean of the Cleveland Marshall College of Law.