The STATE of Ohio, Appellant,

v.

PROVAN, Appellee.

[Cite as *State v. Provan*, 178 Ohio App.3d 107, 2008-Ohio-4343.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2008AP040027.

Decided Aug. 21, 2008.

Michael J. Ernest, for appellant.

Mark R. Devan, for appellee.

FARMER, Judge.

{¶ 1} On October 13, 2005, a search warrant was issued to search the office of appellee, Julie Provan. The search warrant was based upon the affidavit of Captain Michael Goodwin of the New Philadelphia Police Department. Captain Goodwin averred that he had been notified by an attorney that the attorney's client, Wesley Tolle, a landlord, noticed discrepancies in his paperwork after appellee, who collected rents on his behalf, had left his employ. Several rental agreements had been doctored, and receipts indicated that appellee had collected more rent than was due, although her monthly report to Tolle did not list the additional monies. Evidence used to commit the crimes of theft and tampering with records was believed to be located within appellee's office.

{¶ 2} The search warrant was executed on October 14, 2005. Based upon an investigation, the Tuscarawas County Grand Jury indicted appellee on one count of theft in violation of R.C. 2913.02 and 17 counts of forgery in violation of R.C. 2913.31.

{¶ 3} On December 7, 2007, appellee filed a motion to suppress, claiming the warrant was not supported by probable cause. A hearing was held on April 1, 2008. By judgment entry filed April 17, 2008, the trial court granted the motion to suppress. A nunc pro tunc judgment entry was filed on April 24, 2008 to correct a typographical error.

{¶ 4} Appellant, the state of Ohio, filed an appeal, and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 5} "The trial court erred in granting the defendant's motion to suppress the search warrant findings from October 14, 2005."

II

{¶ 6} "Trial court erred in failing to utilize the good faith exception to the search warrant requirement."

I

{¶ 7} Appellant claims that the trial court erred in granting appellee's motion to suppress. Specifically, appellant claims that the trial court erred in finding that there was insufficient evidence of probable cause to issue the search warrant. We agree.

{¶ 8} In *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus, the Supreme Court of Ohio discussed this court's role in reviewing the issue sub judice as follows:

{¶ 9} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 followed.)"

{¶ 10} In determining the issue of probable cause for a search warrant, the *George* court stated the following at paragraph one of the syllabus:

{¶ 11} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [1983], 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 followed.)"

{¶ 12} The United States Supreme Court explained "probable cause" as follows:

{¶ 13} "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879.

{¶ 14} After reviewing the affidavit of the investigating officer, Captain Michael Goodwin, and the transcript of the search warrant hearing held by the issuing judge, the trial court determined that "probable cause was lacking for the issuance of a search warrant":

{¶ 15} "The affidavit alleges violations of R.C. 2913.02 (Theft) and R.C. 2913.42 (Tampering with Records) and that a search of Provan's office will reveal evidence of those crimes in the form of various records kept by Provan. The affidavit informs us that there are certain discrepancies between the rent called for in office copies of rental agreements and copies possessed by tenants. It gives one example of a $60.00 discrepancy.

{¶ 16} "But we do not have names of tenants, dates of rental payments/postings and no supporting documents. Some documents were shown to Judge Thomakos, but not made part of the record. The rental receipts shown to the judge do not have the name of the tenant. The judge asks Goodwin if the tenants pay their own utilities. He first answers 'yes', but then changes his answer to 'most of them pay their own utilities.'

{¶ 17} "We can surmise from the affidavit that Goodwin believes that Provan is stealing from Tolle and covering it up by altering rental agreements. But that belief or hunch does not equal probable cause.

{¶ 18} "The affidavit tells us nothing about Tolle; very little about the relationship he had with Provan and does not attempt to rule out innocent explanations for the discrepancies.

{¶ 19} "Goodwin has received some records from Tolle or Fox, but they are not part of the affidavit or the hearing record.

{¶ 20} "The affidavit is also lacking any information which supports Goodwin's hunch that documents in Provan's office will contain evidence of a crime and the identity of the crime she supposedly committed.

{¶ 21} "There is also practically no information in the affidavit about Tolle and why he is reliable."

{¶ 22} As noted by the trial court, the crimes alleged were theft and tampering with records. Did the affidavit and sworn testimony of Captain Goodwin establish that these alleged crimes had or probably had occurred? Secondly, was there likely to be evidence of the alleged crimes at the targeted location?

{¶ 23} From our review of the affidavit and testimony, the likelihood of rental receipt books being located at appellee's office was clearly established. The targeted location to be searched was appellee's office wherein she collected rents on behalf of Tolle, the complainant sub judice, as well as other landlords. In addition, in refusing to turn over the receipt book to Tolle, appellee acknowledged that they were part of one receipt book comingled with the receipts of other landlords.

{¶ 24} The more difficult analysis is whether there was probable cause to believe that the alleged crimes had been committed. As accepted in Ohio, hearsay does not disqualify evidence in a probable-cause determination. *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. However, as noted by the trial court, hunches and guesses do not amount to probable cause.

{¶ 25} Captain Goodwin's primary information was given to him by the complainant, Tolle, and his attorney. The theory behind the allegations was that appellee charged $60 more to a tenant than the contracted leasehold amount, and the lower leasehold amount was reported to Tolle.

{¶ 26} The trial court was correct in noting that the specific tenant was not identified by name. However, in the issuing court's questioning of Captain Goodwin, the tenant was identified by the leasehold address. The search-warrant hearing transcript reveals that copies of the receipts, leasehold agreement, and receipt summary were shown to the issuing court:

{¶ 27} "DETECTIVE GOODWIN: * * *On May 31st of this year was her [appellee's] last date of employment with him [Tolle]. While they were doing sort of a transition to figure out who was going to be their new manager and office manager, some discrepancies with rents came to them and one of the ones that stood out big time was the Hispanic fellow that they collected, he was paying two hundred or his contract was two hundred dollars a month. They obtained the contract that the tenant actually had and I'll show you, this is what the office copy kept, it was two hundred and it appears on the original that there is actually

a white out underneath that. The copy or the company office keeps two of them and both of them have two hundred. They obtained this one from the tenant of two sixty is what the tenant's contract said.

{¶ 28} " * * *

{¶ 29} "THE COURT: Let me see the signatures. So that was signed by Michele Provan and—

{¶ 30} " * * *

{¶ 31} "DETECTIVE GOODWIN: These are copies of the receipts that they were able to obtain, most of them had I think Julie's name.

{¶ 32} "THE COURT: From—

{¶ 33} "DETECTIVE GOODWIN: From—

{¶ 34} "THE COURT:—the tenant?

{¶ 35} "DETECTIVE GOODWIN:—this tenant of this particular house—

{¶ 36} " * * *

{¶ 37} "DETECTIVE GOODWIN: And the highlighted is showing two hundred dollars—

{¶ 38} "THE COURT: Au-hau.

{¶ 39} "DETECTIVE GOODWIN:—for the multiple months so it appears as she was keeping sixty dollars of the two hundred of what she's collected.

{¶ 40} " * * *

{¶ 41} "DETECTIVE GOODWIN: So several of them that, with the two hundred. And there's, there's several other incidents where they were able to come up with receipts, other tenants, that collect eight hundred dollars.

{¶ 42} "THE COURT: And that doesn't say who. Oh, it's got the address.

{¶ 43} "DETECTIVE GOODWIN: It's got the address.

{¶ 44} "THE COURT: 731—

{¶ 45} "DETECTIVE GOODWIN: Right.

{¶ 46} "THE COURT:—West High."

{¶ 47} We find that this testimony establishes the likelihood or probability that a crime was committed. Appellee argues that because the affiant waited some two months before seeking a search warrant, the information was stale. We disagree. The only issue as to staleness as a defense against probable cause is whether the evidence sought to be obtained would not be at the targeted location after the passage of time. Was it probable that the evidence was presently located at appellee's office? The answer would be "yes," given Captain

Goodwin's testimony that appellee admitted to comingling her receipts in her receipt book and that she still collected rents.

{¶ 48} Upon review, we conclude that the trial court erred in finding a lack of probable cause to issue the search warrant, and erred in granting appellee's motion to suppress.

{¶ 49} Assignment of error I is granted.

## II

{¶ 50} Based upon our decision in assignment of error I, this assignment is moot.

{¶ 51} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby reversed.

Judgment reversed.

GWIN, P.J., and WISE, J., concur.