DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} The Akron police department entered a house at 906 Sherman Street after obtaining a search warrant. SirJeffrey Carroll and his nephew were in the house at the time of the search. Numerous drugs were found in the house, along with two handguns and other instruments of drug trafficking. This court upholds the trial court's denial of Mr. Carroll's motion to suppress. It also affirms his convictions for possession of marijuana, possession of heroin, and trafficking in heroin because they are supported by sufficient evidence and are not against the manifest weight of the evidence.
 FACTS {¶ 2} On August 7, 2006, police received an anonymous call concerning a house at 910 Sherman Street. The caller said that there were drugs being sold from the house, that there was a man at the house wearing pants from the Ross county jail, and that there were semi-automatic *Page 2 
pistols in the house. Later that day, the police began watching the house. After arriving on the street, they discovered that 910 Sherman Street did not exist, but that there was a house at 906 Sherman Street.
 {¶ 3} Within the first hour of observation, police witnessed five cars stopping outside the 906 Sherman Street house. Each of those cars only stayed for a few minutes. The surveillance officers began reporting the license numbers of the cars to other officers in the area, who pulled them over several blocks away. The driver of one of the cars had heroin, which she said she had bought at the Sherman Street house from a man named "Ace." Another driver, who did not have any drugs, said that she knew the Sherman Street house was a drug house. Finally, a third driver said that she had tried to buy heroin at the Sherman Street house, but was turned away because she had parked on the street instead of in the driveway.
 {¶ 4} While some officers continued the surveillance, others prepared a search warrant. The officer who prepared the search warrant requested a "no knock" warrant. Based on the anonymous tip, the police believed that a particular prisoner from the Ross county jail was in the house. This prisoner, who had escaped from the jail shortly before this incident, was originally jailed for the shooting of a police officer and was now wanted on escape charges. The court issued a "no knock" search warrant.
 {¶ 5} Around 8:30 p.m., the Akron Special Weapons and Tactics team entered the Sherman Street house. They discovered Mr. Carroll and his nephew inside. After they secured the house, investigators searched it. They discovered heroin on the floor and in the toilet of a bathroom off the kitchen. They also discovered heroin, crack cocaine, cash, keys to the house, and various drug paraphernalia in the kitchen. In the living room, they found more heroin, cash, *Page 3 
two loaded handguns (found under a couch), and a duffle-bag that had three bags of marijuana in it. In an upstairs bedroom, they found heroin hidden in a light fixture.
 {¶ 6} With the exception of the heroin found in the toilet, all of the heroin found was divided into bindles. At trial, an officer explained that a bindle is a folded piece of paper roughly the size of a gum wrapper holding a single dose of heroin. Ten of these bindles bound together with a rubber-band is known as a bundle. There were ten bundles (100 doses) hidden in the bedroom light fixture.
 {¶ 7} Mr. Carroll denied owning the Sherman Street house, or any of the items in it. He testified that he was merely a visitor and had no knowledge of the drugs found in the house, with the exception of one bag of marijuana.
 SUPPRESSION {¶ 8} Mr. Carroll has argued that the police officer's affidavit did not contain sufficient probable cause for issuance of a search warrant. According to him, the anonymous tip, police surveillance, and description of the house by three different drivers who had recently visited it did not provide probable cause to believe that evidence of a crime would be found in the house.
 {¶ 9} This Court is to look at the magistrate's decision and determine if there was a substantial basis for determining that there was probable cause. State v. George, 45 Ohio St. 3d 325, paragraph two of the syllabus (1989). In doing so, this Court is to "accord great deference to the magistrate's determination." Id. Any marginal cases should be ruled in favor of upholding the warrant. Id.
 {¶ 10} At the hearing on Mr. Carroll's motion to suppress, the parties stipulated to admission of the affidavit that had been attached to the search warrant. The affidavit described the investigation that had taken place. It explained that police had been watching the house all *Page 4 
day and had seen heavy traffic. It explained how cars had been pulled over after leaving the house and gave detailed information concerning each of those stops.
 {¶ 11} Based on the affidavit that was before the trial court, this Court concludes that the trial court did not err by denying Mr. Carroll's motion to suppress. The police did not rely merely on the anonymous tip. Instead, they conducted their own investigation, which included surveillance of the house for several hours and questioning of the drivers of several cars that had stopped at the house. Mr. Carroll's third assignment of error is overruled.
 SUFFICIENCY OF THE EVIDENCE {¶ 12} Mr. Carroll's second assignment of error is that the trial court incorrectly denied his motion for acquittal at the close of the State's case. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Crim. R. 29(A). Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins,78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554,2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Carroll's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 POSSESSION {¶ 13} Mr. Carroll was convicted of violating Section 2925.11 of the Ohio Revised Code. Under that section, "[n]o person shall knowingly obtain, posses, or use a controlled substance." R.C. 2925.11(A).
 {¶ 14} Section 2925.01(K) of the Ohio Revised Code defines "possession" as "having control over a thing or substance. . . ." It may be actual or constructive. State v. McShan, *Page 5 77 Ohio App. 3d 781, 783 (1991). Constructive possession is demonstrated if drugs are in the defendant's dominion or control. State v. Wolery, 46 Ohio St. 2d 316, 329 (1976); McShan, 77 Ohio App. 3d at 783. The State may prove control through circumstantial evidence. See Jenks,61 Ohio St. 3d at 272.
 {¶ 15} Police found bindles of heroin in plain sight in both the bathroom and the kitchen. They also found three bags of marijuana in a duffle-bag, and Mr. Carroll admitted that one of those bags of marijuana was his. He said he intended to use it that evening, but denied ownership of anything else in the house, including the duffle-bag and the other two bags of marijuana in it.
 {¶ 16} Although Mr. Carroll denied that he owned the house or anything in it, at the time the police entered the house, he and his nephew were the only people there. Based upon all of the evidence, this Court concludes that Mr. Carroll was in constructive possession of the drugs found in the house.
 TRAFFICKING {¶ 17} Section 2925.03 of the Ohio Revised Code provides that "[n]o person shall knowingly . . . prepare for distribution . . . a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support the jury's finding that Mr. Carroll actively prepared narcotics to be resold. At trial, several officers testified that the house was sparsely furnished. There was a television and a couch in the living room, little evidence of food in the kitchen, and no bed or mattress anywhere in the house. *Page 6 
 {¶ 18} Throughout the house, there were numerous bindles of heroin. Each bindle was wrapped in paper and had one of two labels on it. A chemist from the Ohio Bureau of Criminal Identification testified that the bindles had either the term "Cargo Pak" or "Pyramid Papers," on them and said that the labels looked as if they had been prepared by a business.
 {¶ 19} Officers also found a metal screen commonly used in the preparation of cocaine for sale, chemicals commonly used to mix with cocaine, a scale, extra bindle wrappers, and two loaded handguns. There were two piles of cash in small bills, one in the living room and one in the kitchen. Several officers testified that having a large amount of cash in small denominations is a common practice of drug traffickers.
 {¶ 20} The police had observed the house for several hours on the day of the arrests. During that surveillance, eight cars stopped at the house. Several officers testified that a large amount of foot traffic is a common sign of a drug house. One of the drivers who was stopped shortly after leaving the house told police that she had just purchased heroin from a man named "Ace" who lived at the house and that she had purchased heroin from him several times in the past at several different locations. At trial, she identified Mr. Carroll as the man she knew as "Ace."
 {¶ 21} The evidence was sufficient to support the finding that Mr. Carroll was trafficking in heroin. There were large quantities of drugs in the house that were packaged for individual use. Several police officers testified that the amount of drugs was beyond the scope of what could be considered as being for personal use. Mr. Carroll's second assignment of error is overruled. *Page 7 
 MANIFEST WEIGHT {¶ 22} Mr. Carroll's first assignment of error is that his convictions are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 23} Mr. Carroll testified on his own behalf at trial. He said that he was only visiting the house and that the drugs found there, with the exception of one small bag of marijuana that he said was for his personal use, were not his. According to him, he is a resident of Columbus, Ohio, and, on the day of the search, had received a phone call from a friend, inviting him to Akron for a visit. He claimed that he and his nephew left Columbus that morning and arrived in Akron sometime in the afternoon. He said that, shortly after arriving at the house, he left to go shopping and had not returned until a few minutes before the police showed up.
 {¶ 24} Mr. Carroll has argued that, if the police had taken fingerprints from the light fixture, guns, and bindles of heroin, they would have not discovered any prints that linked him to the drugs. The police did not gather any fingerprints at the house. Several officers testified that taking fingerprints was not a standard protocol in such circumstances. They had watched the house all afternoon and did not see Mr. Carroll leave or return. Furthermore, a witness testified that she had purchased heroin from the house and identified Mr. Carroll as the person who sold it to her. When the house was searched, a large amount of drugs and items associated with drug *Page 8 
trafficking were found. Based upon these facts, this Court concludes that the jury did not lose its way. Mr. Carroll's first assignment of error is overruled.
 CONCLUSION {¶ 25} The trial court correctly denied Mr. Carroll's motion to suppress. His convictions of possession of marijuana and heroin and trafficking in heroin are supported by sufficient evidence and are not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 CARR, P. J. MOORE, J. CONCUR. *Page 1